UNITED STATES of America, Appellee,

v.

**Richard Harmon BELL, Defendant, Appellant.**

**No. 92–1969.**

United States Court of Appeals, First Circuit.

Heard Feb. 2, 1993.

Decided March 9, 1993.

Sarah Jennings Hunt, for defendant, appellant.

F. Mark Terison, Asst. U.S. Atty., Portland, ME, with whom Richard S. Cohen,

U.S. Atty., Augusta, ME, was on brief, for U.S.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and BOUDIN, Circuit Judge.

SELYA, Circuit Judge.

This appeal asks, essentially, a single question: Must a district court, at a reconvened sentencing hearing following a defendant's successful appeal, reexamine its explicit findings and conclusions on an issue not raised in the appeal and which the defendant had previously acknowledged to be correctly decided? Because we do not believe that the district court is under so wide-ranging an obligation, we affirm the judgment below.

## I.

### Prior Proceedings

Defendant-appellant Richard Harmon Bell pleaded guilty to an indictment detailing six prior felony convictions and charging him with receipt and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (1988). Believing that Bell met all three criteria for career offender status,[1] see, e.g., United States v. Fiore, 983 F.2d 1, 1–2 (1st Cir.1992) (enumerating criteria), the presentence investigation report (PSI Report) recommended imposition of sentence under U.S.S.G. § 4B1.1 (Nov. 1991). While acknowledging that he had committed the gaggle of crimes attributed to him in the PSI Report, Bell nonetheless objected to the sentencing recommendation on the ground that the crime of conviction was not a crime of violence.

At the sentencing hearing, Bell renewed this argument. Withal, his counsel declared no fewer than three times, and Bell himself stated at least twice, that even if Bell's argument prevailed, he would be subject to a mandatory minimum sentence of 15 years as his prior convictions were sufficient to place him within the purview of the Armed Career Criminal Act (ACCA),

18 U.S.C. § 924(e)(1) (1988) (stipulating that a defendant is considered an armed career criminal if he has three prior convictions for violent felonies and if the offense of conviction is possession of a firearm which has traveled across state lines). In the course of the sentencing proceedings, the district court found that Bell had been convicted previously of a half-dozen violent crimes listed in the PSI Report, including assault and battery with a dangerous weapon, kidnapping, and various episodes of robbery. The defendant lodged no objection to this finding; to the exact contrary, statements made by both Bell and his counsel patefied its accuracy. Nevertheless, the court concluded that the offense of conviction was itself a crime of violence as defined in U.S.S.G. § 4B1.1 and sentenced Bell to a prison term in excess of 30 years as a career offender rather than to a shorter period of incarceration as an armed career criminal.

Bell appealed the sentence. On appeal, his counsel vigorously disputed whether a felon-in-possession conviction could lawfully trigger the career offender guideline. Counsel conceded, however, that "based upon [Bell's] prior record, he is subject to an enhancement ... of 15 years to life under the Armed Career Criminal [Act]." We bought counsel's wares, holding "that, where the offense of conviction is the offense of being a convicted felon in knowing possession of a firearm, the conviction is not for a 'crime of violence' and that, therefore, the career offender provision of the federal sentencing guidelines does not apply." United States v. Bell, 966 F.2d 703, 703 (1st Cir.1992). Hence, we vacated Bell's sentence and remanded for resentencing in light of our opinion. See id. at 707.

At the resumed sentencing hearing, Bell for the first time sought to challenge the validity of his prior convictions and, through that medium, his ACCA status. The district court ruled that the objection was untimely. It sentenced Bell as an

[1] Bell was more than eighteen years old at the time he perpetrated the offense of conviction; that offense was a crime of violence; and his record contained six prior convictions for violent felonies.

armed career criminal. This appeal ensued.

## II.

### *Discussion*

Bell strives gallantly to persuade us that the district court was obliged to entertain his belated challenge to some or all of the six predicate convictions; or, in the alternative, that the court abused its discretion in refusing to do so. We find both parts of this asseverational array unconvincing.

### A.

■ The first of appellant's contentions is easily dispelled. An appellate court's disposition of an appeal must be read against the backdrop of prior proceedings in the case. *See United States v. Cornelius*, 968 F.2d 703, 706 (8th Cir.1992) (explaining that a remand does not automatically rejuvenate the entire case); *United States v. DeJesus*, 752 F.2d 640, 643 (1st Cir.1985) (per curiam) (similar); *see also Kotler v. American Tobacco Co.*, 981 F.2d 7, 13–14 (1st Cir.1992) (outlining rules governing appellate court's power to reconsider an issue on remand from the Supreme Court). It follows, then, that in determining whether a trial court is duty bound to rethink an issue foregone in an earlier appeal, the court "must implement both the letter and spirit of the [previous] mandate, taking into account the appellate court's opinion and the circumstances it embraces." *United States v. Kikumura*, 947 F.2d 72, 76 (3d Cir.1991) (citation and internal quotation marks omitted). We apply these tested tenets in the instant case.

■ Here, our mandate disposing of Bell's original appeal directed the district court to conduct resentencing "in accordance with the opinion issued" in that appeal. The context of that order was the opinion itself—an opinion which discussed, in some detail, *see Bell*, 966 F.2d at 704–07, the single issue that appellant chose to proffer. The opinion relied on Bell's eschewal of any other challenge and virtually foreclosed the argument he now belatedly advances. We wrote that, if the district

court had not erroneously "sentenced [Bell] as a career offender under section 4B1.1, the guideline sentencing range apparently would have been much lower and he would, in all probability, have been sentenced to 15 years in prison (the mandatory minimum sentence under the statute of conviction)." *Id.* at 704. It is readily evident, therefore, that neither the letter nor the spirit of our mandate is consistent with the turnaround that Bell proposes today: starting the sentencing pavane from scratch following remand. Rather than obligating the district court to examine the validity of Bell's previous convictions, our mandate, read in the most plausible manner, constrained the district court from considering on remand a collateral challenge that defendant had, from all appearances, deliberately bypassed.

■ The black letter rule governing this point is that a legal decision made at one stage of a civil or criminal case, unchallenged in a subsequent appeal despite the existence of ample opportunity to do so, becomes the law of the case for future stages of the same litigation, and the aggrieved party is deemed to have forfeited any right to challenge that particular decision at a subsequent date. *See Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 250 (D.C.Cir.1987); *see also United States v. Duchi*, 944 F.2d 391, 393 (8th Cir.1991) (standing for the proposition that arguments in the alternative, like other challenges, must be brought before an appellate court lest an ensuing ruling become the law of the case). Abandoning this prudential principle would threaten the important policy considerations underlying the law of the case doctrine, such as "stability in the decisionmaking process, predictability of results, proper working relationships between trial and appellate courts, and judicial economy." *United States v. Rivera–Martinez*, 931 F.2d 148, 151 (1st Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 184, 116 L.Ed.2d 145 (1991).

### B.

■ Even where, as here, an appellate court's mandate does not contemplate resurrecting an issue on remand, the trial

court may still possess some limited discretion to reopen the issue in very special situations. *See id.* at 150–52; *Cochran v. M & M Transp. Co.,* 110 F.2d 519, 521 (1st Cir.1940). After all, the so-called "mandate rule," generally requiring conformity with the commands of a superior court on remand, is simply a specific application of the law of the case doctrine and, as such, is a discretion-guiding rule subject to an occasional exception in the interests of justice. *See, e.g., Johnson v. Uncle Ben's, Inc.,* 965 F.2d 1363, 1370 (5th Cir.1992), *petition for cert. filed,* 61 U.S.L.W. 3356 (U.S. Sept. 29, 1992) [No. 92–737]; *Jones v. Lewis,* 957 F.2d 260, 262 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 125, 121 L.Ed.2d 80 (1992); *United States v. Miller,* 822 F.2d 828, 832–33 (9th Cir.1987); *Piambino v. Bailey,* 757 F.2d 1112, 1119–20 (11th Cir. 1985), *cert. denied,* 476 U.S. 1169, 106 S.Ct. 2889, 90 L.Ed.2d 976 (1986); *Continental Bank & Trust Co. v. American Bonding Co.,* 630 F.2d 606, 608 (8th Cir.1980); *Cleveland v. FPC,* 561 F.2d 344, 348 (D.C.Cir.1977); *Banco Nacional de Cuba v. Farr,* 383 F.2d 166, 178 (2d Cir.1967), *cert. denied,* 390 U.S. 956, 88 S.Ct. 1038, 19 L.Ed.2d 1151 (1968); *see also Kotler,* 981 F.2d at 13 (on remand, lower court ordinarily retains the "naked power to reexamine" a closed issue, but should exercise such power "sparingly and only when ... necessary to avoid extreme injustice"). In other words, because the law of the case doctrine is a rule of policy and practice, rather than a jurisdictional limitation, it may tolerate a "modicum of residual flexibility" in exceptional circumstances. *Rivera–Martinez,* 931 F.2d at 151; *see also Cochran,* 110 F.2d at 521 (warning against allowing the law of the case doctrine to become an instrument of injustice). Assuming this to be the law,[2] we turn to Bell's fallback claim that the district court, in its discretion, should have entertained his challenge to the myriad of predicate offenses.

 Here, reopening an already decided matter cannot be justified. At a minimum, reopening would require a showing of exceptional circumstances—a threshold which, in turn, demands that the proponent accomplish one of three things: show that controlling legal authority has changed dramatically; proffer significant new evidence, not earlier obtainable in the exercise of due diligence; or convince the court that a blatant error in the prior decision will, if uncorrected, result in a serious injustice. *See, e.g., Rivera–Martinez,* 931 F.2d at 151 (collecting cases); *United States v. Rosen,* 929 F.2d 839, 842 n. 5 (1st Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 77, 116 L.Ed.2d 51 (1991); *DeJesus,* 752 F.2d at 642; *see also Marin–Piazza v. Aponte Roque,* 909 F.2d 35, 38 (1st Cir.1990). Bell met none of these benchmarks. The relevant legal authority has not changed.[3] The belated challenge to the predicate offenses is, at best, conclusory and self-serving; no hard evidence has been adduced from which it could be concluded that four or more of Bell's predicate convictions were infirm; and, moreover, no credible explanation has been offered for Bell's failure to assert the challenge in a more timely fashion. Finally, no manifest injustice looms. The district court was not faced with an isolated instance of inadvertent oversight on the part of a beleaguered defendant. Bell was represented by able counsel

---

**2.** The commentators have noted considerable uncertainty about whether a district court is *always* obligated to conform the scope of its inquiry on remand with the appellate court's mandate. *See, e.g.,* 18 C. Wright, et al., *Federal Practice and Procedure* § 4478, at 793 & n. 15 (1981 & Supp.1992). We believe that the weight of logic and authority pushes against so rigid a position, but we need not decide the issue squarely; even assuming the existence of residual discretion, we find no exceptional circumstances that would warrant the court below in peering behind our original mandate.

**3.** It is true that *United States v. Paleo,* 967 F.2d 7 (1st Cir.1992), a case dealing with a district court's discretion to consider collateral attacks on prior convictions at sentencing, postdated Bell's first appeal. As appellant concedes, however, *Paleo* was no bolt from the blue. We had suggested on several previous occasions that such challenges were permissible. *See, e.g., United States v. Patrone,* 948 F.2d 813, 817 (1st Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2953, 119 L.Ed.2d 575 (1992); *United States v. Unger,* 915 F.2d 759, 761–62 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1005, 112 L.Ed.2d 1088 (1991); *see also Paleo,* 967 F.2d at 11 (collecting caselaw from five other circuits holding to like effect).

throughout. He and his lawyer confirmed the district court's findings and conclusion time and again. He passed up numerous opportunities for mounting the challenge he now wishes to press. Last, but far from least, there is no real reason to believe that Bell is exempt from armed career criminal status. In the circumstances of this case, we simply cannot fault the district court for declining to reopen the record.

### III. CONCLUSION

We need go no further. The law of the case doctrine dictates that all litigation must sometime come to an end. *See Arizona v. California,* 460 U.S. 605, 619, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983). Here, appellant has provided us with no valid reason to depart from this policy and overturn the district court's refusal to resuscitate an issue previously agreed upon and decided in the case.

*Affirmed.*