**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 98-4415

REGAN THOMAS STARKIE,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Winston-Salem.
Frank W. Bullock, Jr., Chief District Judge.
(CR-97-128)

Argued: December 4, 1998

Decided: January 7, 1999

Before MURNAGHAN and WILLIAMS, Circuit Judges, and
HERLONG, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Thomas Norman Cochran, Assistant Federal Public
Defender, Greensboro, North Carolina, for Appellant. Douglas Can-
non, Assistant United States Attorney, Greensboro, North Carolina,
for Appellee. **ON BRIEF:** Walter C. Holton, Jr., United States Attor-
ney, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

After pleading guilty to bank larceny in violation of 18 U.S.C.A. § 2113(b) (West Supp. 1998), Regan Thomas Starkie was sentenced to twelve months imprisonment and ordered to pay $13,275 in restitution and a $100 special assessment. On appeal, Starkie contends only that the district court erred by transferring the $500 used to secure his bail to the United States Attorney to satisfy immediately a portion of his criminal monetary penalties. Finding no error, we affirm.

I.

On May 28, 1997, Regan Thomas Starkie was indicted by a federal grand jury for his involvement in breaking into an automatic teller machine (and taking over $84,000) in violation of 18 U.S.C.A. § 2113(a) (West Supp. 1998). At his detention hearing, Starkie was ordered released on a $10,000 surety bond. Rosa Cooper, Starkie's mother, was listed as surety. A $500 cash deposit was made to secure the bond, and a receipt was issued to Starkie stating that the funds were received "from" him.

On July 16, 1997, a superseding indictment was filed, charging Starkie with bank larceny in violation of 18 U.S.C.A. § 2113(b) (West Supp. 1998). On July 17, 1997, Starkie pleaded guilty to the superseding indictment. On October 2, 1997, the district court sentenced Starkie pursuant to the guideline governing property offenses. See U.S. Sentencing Guidelines Manual § 2B1.1 (1995). Due to the amount of money involved, the district court set Starkie's base offense level at twelve. See U.S.S.G. § 2B1.1(b)(1)(I). Because the district court found that the offense involved more than minimal planning, it increased Starkie's base offense level an additional two levels. See U.S.S.G. § 2B1.1(b)(4). Finally, because Starkie accepted responsibility for the instant offense, the district court reduced his base offense

2

level by two levels. See U.S.S.G. § 3E1.1. With an adjusted base offense level of twelve and a criminal history category of I, Starkie's guideline range was ten to sixteen months. The district court sentenced Starkie to a twelve month term of imprisonment.

In addition to a term of imprisonment, the district court ordered Starkie to pay a special assessment of $100 and $13,275 in restitution, at the rate of $250 per month during his three-year period of supervised release:

> The defendant, of course, will pay a special assessment of $100. The defendant will pay restitution in the amount of $13,275. Such shall be paid during the course of his three years of supervised release . . . at the rate of $250 per month unless changed by this Court.

(J.A. at 47-48.) On October 21, 1997, the district court entered its written judgment, which did not conform to its oral pronouncements regarding restitution payment:

> Payments of the total fine and other criminal monetary penalties shall be due as follows: in full immediately[.]

(J.A. at 61.) Starkie filed a timely notice of appeal with this Court.

On appeal, this Court upheld the two-level increase under § 2B1.1(b)(4) for more than minimal planning. We, however, remanded the case to the district court with instructions to correct its written judgment to reflect the oral sentence. See United States v. Starkie, 139 F.3d 896 (4th Cir. 1998) (unpublished) (Starkie I). In particular, this Court noted the well-settled rule that "[w]hen there is a conflict between a written order of sentence and an oral sentence, the latter is controlling." Id.

On remand, the Government filed a motion pursuant to 28 U.S.C.A. § 2044. Section 2044 provides as follows:

> On motion of the United States attorney, the court shall order any money belonging to and deposited by or on behalf

3

> of the defendant with the court for the purposes of a criminal appearance bail bond (trial or appeal) to be held and paid over to the United States attorney to be applied to the payment of any assessment, fine, restitution, or penalty imposed upon the defendant. The court shall not release any money deposited for bond purposes after a plea or a verdict of the defendant's guilt has been entered and before sentencing except upon a showing that an assessment, fine, restitution or penalty cannot be imposed for the offense the defendant committed or that the defendant would suffer an undue hardship. This section shall not apply to any third party surety.

28 U.S.C.A. § 2044 (West 1994). Starkie filed a response in opposition to the Government's motion on May 7, 1998. In his response, Starkie argued that under this Court's mandate, he was under no obligation to begin restitution repayment until after his release from custody.

On May 18, 1998, the district court granted the Government's motion. As a result, the clerk of court applied the $500 cash deposit used to secure Starkie's bail as full payment of the $100 special assessment and as partial payment of the restitution owed by Starkie. On June 3, 1998, the district court entered an amended order pursuant to the mandate of this Court in Starkie I. The section of the written judgment entitled "Schedule of Payments" states that "[t]he [district] court will credit the defendant for all payments previously made toward any criminal monetary penalties." (J.A. at 79.) Moreover, in conformity with the oral sentence, the written judgment now reads:

> The special assessment may be paid as directed by the Bureau of Prisons under the Inmate Financial Responsibility Program. Upon defendant's release from incarceration, he shall pay $250.00 per month (unless the monthly amount is changed by the Court at that time) toward restitution until the full amount is paid.

(J.A. at 79.) This appeal followed.

4

II.

On appeal, Starkie argues that the district court erred in three respects when it granted the Government's motion to transfer the $500 used to secure bail. First, Starkie contends that the district court's order violated the "mandate rule." Second, Starkie asserts that the Government's motion was untimely and foreclosed by waiver. Finally, Starkie alleges that the bail funds on deposit did not belong to him.**1** We address each argument in turn.

A.

As this Court has noted, "[f]ew legal precepts are as firmly established as the doctrine that the mandate of a higher court is `controlling as to matters within its compass.'" United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) (quoting Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 168 (1939)). Indeed, it is indisputable that a lower court generally is "bound to carry the mandate of the upper court into execution and [may] not consider the questions which the mandate laid at rest." Sprague, 307 U.S. at 168. Because this "mandate rule" is merely a "specific application of the law of the case doctrine," United States v. Bell, 988 F.2d 247, 251 (1st Cir. 1993), it compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court. In addition, the rule forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example, because they were not raised in the district court. See id. at 250. Thus, when this Court remands for further proceedings, a district court must, except in rare circumstances, "`implement both the letter and spirit of the . . . mandate, taking into account[our] opinion and the circumstances it embraces.'" Id. (quoting United States v. Kikumura, 947 F.2d 72, 76 (3d Cir. 1991)).

_____

**1** During oral argument, counsel for Starkie also argued that the district court erred in granting the Government's motion because the Government made the motion only to penalize Starkie for bringing a successful appeal. To the extent this claim is even properly before us, see Canady v. Crestar Mortgage Corp., 109 F.3d 969, 973 (4th Cir. 1997) (holding that issues raised, but not briefed, are deemed waived on appeal), we find it to be without merit.

For the reasons that follow, we conclude that the district court's order directing the Clerk to apply the $500 deposited in the Registry of the district court towards payment of the money owed by the defendant does not conflict with this Court's mandate in Starkie I. This Court instructed the district court to amend its written sentence so that it complied with its oral sentence. The district court's oral sentence, however, did not address whether Starkie's $500 deposit could be applied towards his restitution and special assessment. Thus, it was not an issue on appeal in Starkie I. As a result, it could not be an issue expressly or impliedly covered by the mandate.

Indeed, as the Government notes, Starkie has not been asked to make one of the $250 monthly payments that, according to the oral sentence, are to be made upon his release from prison. Rather, the $500 was already deposited in the district court's registry and subject to § 2044. According to the plain language of§ 2044, the district court must transfer the funds on the motion of the United States Attorney. Therefore, the issue of applying the funds only arises once the Government files a § 2044 motion. Here, it is undisputed that motion was not made until the case was remanded. As a result, it was not an issue on appeal in Starkie I.

B.

Next, Starkie asserts that the Government's motion was untimely and foreclosed by waiver. By its own terms, § 2044 does not contain a deadline within which the Government must file a motion to transfer bail funds. Because the district court may release the funds after sentencing, the Government would be wise to make its motion prior to that time. Nevertheless, the only mention of a time frame in the statute is the requirement that the motion must be made after the imposition of an assessment, fine, restitution, or penalty on the defendant. Because the Government complied with the dictates of the statute, we hold that its motion was not untimely.

C.

If a third party paid the bail funds, the district court may not, pursuant to § 2044, transfer the funds to satisfy the payment of any assessment, fine, restitution, or penalty imposed upon the defendant. On

6

appeal, Starkie alleges, for the first time, that the Government did not assert (or establish) that the bail funds on deposit belonged to him. We disagree with both arguments.

First, the Government did assert that Starkie owned the bail funds in question. In its § 2044 motion, the Government specifically stated that "Starkie . . . executed an Appearance Bond .. . in the amount of $500," and that Starkie "deposited with the Registry of this Court the sum of $500." (J.A. at 66-67.)

Second, substantial evidence supports the Government's claim that the $500 belonged to Starkie rather than his mother. For example, the receipt for the $500 was given to Starkie and shows that the money was from him. Although Rosa Cooper's name appears on the Appearance Bond as surety, the receipt is the legal document that verifies ownership of the money on deposit. Indeed, by putting his name on the receipt, the Clerk gave Starkie, not his mother, the legal right to reclaim the money after his appearance in Court. Moreover, in Starkie's response to the Government's § 2044 motion, he twice asserted ownership of the $500:

> On June 17, 1997, the Defendant executed an appearance bond and deposited with the Court registry $500.00 in support of that bond.

(J.A. at 70.)

> [T]he defendant objects to the Government's motion to apply his $500.00 bond money to either obligation.

(J.A. at 72 (emphasis added).)[2] Because the receipt indicates that the $500 belonged to Starkie and because Starkie asserted ownership of the $500 in his response to the Government's motion,§ 2044 applies to the money in question.

_____

[2] During oral argument counsel for Starkie argued, for the first time, that the assertions of ownership made by Starkie in his response to the Government's motion were simple drafting errors. Because counsel could have raised the argument in his reply brief, we will not consider it at this late juncture.

7

III.

Finally, Starkie contends that even if the district court had the authority to transfer the bail funds to the United States Attorney to satisfy immediately a portion of his criminal monetary penalties, the amended judgment of the district court is still erroneous and must be corrected to reflect the full payment of the $100 special assessment and the partial payment of the restitution order. We disagree. In the amended judgment, the district court specifically stated that it would "credit the defendant for all payments previously made toward any criminal monetary penalties." (J.A. at 79.) As a result, there is no need to remand.

IV.

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

8