Filed:  February 23, 2006

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

———————————

No. 03-4422
(CR-98-144)

———————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LLOYD ANTHONIE WILLIAMS,

Defendant - Appellant.

———————————

O R D E R

———————————

The court grants appellant's motion to correct the opinion and amends its opinion filed January 20, 2006, as follows:

On page 4, lines 9 and 11 -- the word "crack" is deleted.

For the Court - By Direction

_/s/ Patricia S. Connor_
Clerk

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 03-4422**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LLOYD ANTHONIE WILLIAMS,

Defendant - Appellant.

---

Appeal from the United States District Court for the Western District of North Carolina, at Shelby. Lacy H. Thornburg, District Judge. (CR-98-144)

---

Argued: October 28, 2005                    Decided: January 20, 2006

---

Before WILKINS, Chief Judge, and MICHAEL and TRAXLER, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Aaron Edmund Michel, Charlotte, North Carolina, for Appellant. Thomas Richard Ascik, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Robert J. Conrad, Jr., United States Attorney, Charlotte, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

This is Lloyd Anthonie Williams' third appeal after his conviction for unlawful possession of a firearm. See 18 U.S.C.A. § 922(g)(1). Williams contends that the district court erred by sentencing him in strict accordance with the instructions we set forth in the second appeal. Williams argues that the district court should have considered new evidence involving his prior state convictions, evidence that could have resulted in a substantially lower sentence if considered by the district court. For the reasons set forth below, we affirm.

I.

A law enforcement officer discovered a gun during a routine traffic stop of a car driven by Williams. Because Williams had prior North Carolina state court felony convictions (one assault conviction and two drug-related convictions), he was charged with unlawful possession of a firearm. Prior to trial, the government filed an information stating that because Williams had three prior convictions for violent felonies or serious drug offenses, it would seek an enhanced sentence under the Armed Career Criminals Act. See 18 U.S.C.A. § 924(e) (the "ACCA"). Williams was convicted after a jury trial. Applying the Career Offender provisions of the Sentencing Guidelines, the district court sentenced Williams to life imprisonment.

Williams appealed. Although we affirmed his conviction, we vacated his sentence, concluding that the § 922(g) charge of which Williams had been convicted did not trigger the application of the Career Offender guidelines. We remanded for re-sentencing, leaving for the district court the question of whether Williams could be sentenced under the ACCA. See United States v. Williams, No. 99-4583, 16 Fed. Appx. 90 (4th Cir. June 14, 2001) (unpublished).

The ACCA provides for a mandatory minimum sentence of fifteen years for a defendant who violates § 922(g) if the defendant has three previous convictions "for a violent felony or a serious drug offense." 18 U.S.C.A. § 924(e)(1). On remand, the district court concluded that Williams' prior North Carolina convictions satisfied the requirements of the ACCA, and the court imposed a sentence of 300 months. Williams appealed again, and we affirmed the district court's conclusion that Williams' state court convictions subjected him to sentencing under the ACCA. We concluded, however, that the district court erred when determining Williams' base offense level. We vacated Williams' sentence and remanded for re-sentencing, giving the district court explicit instructions on how to handle the re-sentencing. See United States v. Williams, No. 01-4869, 57 Fed. Appx. 553, 558 (4th Cir. Jan. 29, 2003) (unpublished) ("Williams' offense level should be 33, which, with his category VI criminal history, yields a sentencing range of 235-293 months. On

3

remand, the district court shall impose a sentence within this range." (citation and footnote omitted)).

Less than two weeks before Williams was to be re-sentenced, counsel for Williams filed a motion for appropriate relief in North Carolina state court seeking a modification of his prior drug convictions. The state did not object to the motion, and an order was entered the same day the motion was filed. The order retroactively modified the prior drug convictions, converting what had been convictions for the sale of cocaine that carried a maximum sentence of ten years to convictions for possession of cocaine that carried a maximum sentence of five years. As modified, Williams' drug convictions no longer qualified as predicate convictions under the ACCA, see 18 U.S.C.A. § 924(e)(2)(A)(ii), leaving Williams with only one conviction (the assault conviction) that could be counted under the ACCA. Thus, at the re-sentencing hearing, Williams argued that he should not be sentenced as an armed career criminal and that he was instead subject to the ten-year maximum sentence set forth in 18 U.S.C.A. § 924(a)(2).[1]

The district court rejected Williams' argument. The district court concluded that under the mandate rule, it was obligated by our prior opinion to impose a sentence of between 235-293 months

---

[1]Absent the designation of Williams as an armed career criminal, the relevant Guidelines sentencing range would be either 70-87 months or 84-105 months, depending upon the application of a particular offense level enhancement.

and that it was not free to consider Williams' argument with regard to the newly modified state-court convictions. The district court sentenced Williams to 293 months imprisonment, and this appeal followed.

## II.

"Few legal precepts are as firmly established as the doctrine that the mandate of a higher court is controlling as to matters within its compass." United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) (internal quotation marks omitted).

> Because this mandate rule is . . . a specific application of the law of the case doctrine, in the absence of exceptional circumstances, it compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court.

Id. (internal quotation marks omitted).

In our opinion in Williams' second appeal, we concluded that Williams' state drug convictions qualified as predicate convictions under the ACCA and we affirmed the district court's decision to sentence Williams as an armed career criminal. We also specifically instructed the district court to impose a sentence between 235 and 293 months. Given the issues that were resolved in the second appeal and the specificity of our instructions to the district court, Williams' claim that he should not be sentenced as an armed career criminal was inconsistent with our mandate.

5

The mandate rule, however, is not without exceptions. Under certain extraordinary circumstances, a trial court has discretion to reopen matters otherwise laid to rest. See id. ("[W]hen this court remands for further proceedings, a district court must, except in rare circumstances, implement both the letter and spirit of the mandate, taking into account our opinion and the circumstances it embraces.") (internal quotation marks and alteration omitted); United States v. Bell, 988 F.2d 247, 251 (1st Cir. 1993) (noting that the mandate rule is not a jurisdictional rule and "may tolerate a modicum of residual flexibility in exceptional circumstances" (internal quotation marks omitted)). Our cases have spelled out the narrow circumstances under which an exception to the mandate rule may be warranted: (1) if "controlling legal authority has changed dramatically"; (2) if "significant new evidence, not earlier obtainable in the exercise of due diligence, has come to light"; or (3) if "a blatant error in the prior decision will, if uncorrected, result in a serious injustice." Bell, 5 F.3d at 67 (internal quotation marks and alterations omitted); see also United States v. Aramony, 166 F.3d 655, 662 (4th Cir. 1999).

Williams contends that the modification of his state drug convictions qualifies as newly discovered evidence that should have been considered by the district court. Preliminarily, we agree with Williams that the retroactive modification of his state

convictions must be considered new "evidence." While this defendant-initiated and defendant-obtained modification is far from the usual kind of "evidence" presented in these situations, it is a fact that has newly come into existence, which is sufficient to make it new "evidence" for purposes of our inquiry. Cf. Johnson v. United States, 125 S. Ct. 1571, 1577 (2005) (concluding that the vacatur of prior state convictions obtained by the defendant was a new "fact" for purposes of determining whether the defendant's § 2255 petition was timely filed); United States v. Gadsen, 332 F.3d 224, 227 (4th Cir. 2003) ("[T]he relevant 'fact' with respect to the operation of Gadsen's § 2255 claim today is the fact that Gadsen's prior state conviction has been conclusively invalidated.").

In addition to requiring new evidence, however, the exception to the mandate rule requires that the defendant exercise due diligence in obtaining that new evidence. See Bell, 5 F.3d at 67. To determine whether Williams exercised due diligence in obtaining the modification of his state court sentences, we must first determine the relevant time frame--that is, we must determine when the due diligence clock begins ticking. We have found no case discussing when the due diligence period should begin in the

7

context of the mandate rule.  We believe, however, that the Supreme Court's decision in Johnson provides guidance on this question.[2]

In Johnson, the defendant was convicted in federal court of various drug charges.  Because of his prior state convictions, the defendant received an enhanced sentence under the career offender provisions of the Sentencing Guidelines.  His conviction and sentence as a career offender were affirmed on appeal.  More than three years after his federal conviction, the defendant filed a petition in state court challenging various convictions, including one upon which his federal designation as a career offender depended.  The state court concluded that the defendant had not validly waived his right to counsel and vacated the convictions.  A few months later, the defendant filed a § 2255 petition challenging his career offender designation.  He alleged that the vacatur of his state convictions was a new "fact" and that his § 2255 petition was timely because it was filed within one year of his "discovery" of this new "fact."[3]  The district court and the court of appeals rejected the § 2255 petition as untimely.

---

[2]We held this case in abeyance pending the Supreme Court's decision in Johnson.

[3]The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a one-year limitations period for the filing of a § 2255 petition, a period that runs from, inter alia, "the date on which the facts supporting the claim . . . could have been discovered through the exercise of due diligence."  28 U.S.C.A. § 2255, ¶ 6(4) (West 2005).

8

The Supreme Court held that the vacatur of the defendant's state convictions was a new fact within the meaning of § 2255. See Johnson, 125 S. Ct. at 1577; see also Custis v. United States, 511 U.S. 485, 497 (1994) (explaining that a federal defendant who successfully challenges a state conviction may "apply for reopening of any federal sentence enhanced by the state sentence[]"). The Court also held that the defendant's receipt of the order vacating the state convictions was the event that triggered the running of AEDPA's one-year statute of limitations. See Johnson, 125 S. Ct. at 1580. Nonetheless, the Court concluded that the defendant had not acted with due diligence in seeking the order, as required by § 2255. See id. at 1582.

The Court determined that it was the possibility of an enhanced federal sentence that would cause a defendant to recognize the need to challenge the validity of his prior state convictions. As to which point in the federal proceedings would trigger the due diligence period, the Court identified three possible dates--the date the federal indictment was disclosed, the date of judgment, or the date of finality after direct appeal. See id. at 1581. Using the date of the federal indictment as the due diligence trigger "would require the quickest response and serve finality best, but it would produce some collateral litigation that federal acquittals would prove to be needless." Id. Using the "date of finality after direct appeal" would minimize collateral litigation, but at

9

the expense of "finality . . . com[ing] late." Id. The Court thus settled on the date that the federal judgment was entered against the defendant:

> This shapes up as a case for choosing the bowl of porridge between the one too hot and the one too cold, and settling on the date of judgment as the moment to activate due diligence seems best to reflect the statutory text and its underlying concerns. After the entry of judgment, the subject of the § 2255 claim has come into being, the significance of inaction is clear, and very little litigation would be wasted, since most challenged federal convictions are in fact sustained.

Id. Because the defendant waited more than three years after the federal judgment was entered to challenge his state convictions, the Court held that the defendant had not acted with due diligence. The Court thus affirmed the dismissal of the defendant's § 2255 petition as untimely. See id. at 1582.

The factual contexts of Johnson and this case are identical in the most important respects. In both cases, the defendants managed to alter their predicate state convictions in a way that brought into question the propriety of their sentencing under the ACCA, and Williams, like the defendant in Johnson, seeks to overturn his ACCA designation because of this "new evidence." There is, of course, an important difference between Johnson and the case at bar. Johnson arose in the habeas context; the federal conviction in Johnson had become final before the defendant began the process of setting aside his state convictions. In this case, by contrast, final judgment has yet to be entered. We do not believe, however,

10

that this difference in the procedural posture of the cases makes Johnson inapplicable.

The interest of preserving the finality of criminal convictions is of paramount importance in the habeas context. See, e.g., Woodford v. Garceau, 538 U.S. 202, 206 (2003) ("Congress enacted AEDPA to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." (internal quotation marks omitted)). A similar interest drives the law-of-the-case and the mandate rules--the need for litigation to finally come to an end. See Klay v. All Defendants, 389 F.3d 1191, 1199 (11th Cir. 2004) ("While not an inexorable command, the law of the case doctrine provides stability and finality in litigation, which are crucial cornerstone values for developing a just and efficient judicial process."); United States v. O'Dell, 320 F.3d 674, 679 (6th Cir. 2003) ("The mandate rule serves the interest in finality. Repetitive hearings, followed by additional appeals, waste judicial resources and place additional burdens on parole officers and personnel and on hardworking district and appellate judges.") (internal quotation marks omitted); Bell, 988 F.2d at 252 ("The law of the case doctrine dictates that all litigation must sometime come to an end."). In our view, the need to bring litigation to an end is of similar importance to the interest in preserving the finality of judgments that guided the Supreme Court's decision in

Johnson.  Cf. Calderon v. Thompson, 523 U.S. 538, 555 (1998) ("Finality is essential to both the retributive and the deterrent functions of criminal law.  Neither innocence nor just punishment can be vindicated until the final judgment is known.  Without finality, the criminal law is deprived of much of its deterrent effect." (citation and internal quotation marks omitted)).  Given these similar interests and the factual similarities between this case and Johnson, we believe that the Johnson Court's analysis of when the due diligence clock should begin to run under § 2255 should apply to the question of when the due diligence clock should begin to run for purposes of determining whether this case justifies making an exception to the mandate rule.

As in Johnson, using the date of indictment as the trigger for the due diligence requirement would encourage collateral litigation that would prove unnecessary in cases where the defendant was acquitted of the federal charges.  Using the date of final judgment as the trigger for the due diligence requirement would present the same problem that gave the Supreme Court pause in Johnson-- litigation in which finality comes much too late.  Williams was convicted in December 1998 and sentenced in August 1999.  We issued our opinion in his first appeal in June 2001 and our opinion in his second appeal in January 2003.  If the due diligence period does not beginning running until final judgment, then the period would not have begun to run even now, seven years after Williams was

12

convicted. Moreover, using the date of final judgment as the beginning of the due diligence period would subject criminal defendants to wildly varying time periods in which to challenge their state convictions. In cases like this one, where there has been appeal after appeal, the defendant would have many years before the due diligence clock would begin ticking. In the more typical case, however, where there is only one appeal, the due diligence period would begin much sooner.

After considering the interest in ensuring that all litigation finally comes to an end and balancing that interest against a defendant's right to challenge his predicate convictions in state court, we see no reason to depart from the Supreme Court's resolution of the due diligence issue in <u>Johnson</u>. Accordingly, we conclude that for purposes of the newly-discovered evidence exception to the mandate rule, the due diligence period begins to run when the judgment of conviction is entered by the district court, not when that judgment becomes final at the conclusion of appellate review.[4] <u>Cf.</u> Fed. R. Crim. P. 33(b)(1) (stating that "[a]ny motion for a new trial grounded on newly discovered evidence

_____

[4]Our determination of when the due diligence clock begins to run is limited to the circumstances of this case, where a federal defendant seeks to overturn an enhanced sentence after challenging the predicate state convictions upon which the enhanced sentence was based. When the due diligence period begins in other cases involving the new-evidence exception to the mandate rule is a question to be answered when presented.

13

must be filed within 3 years after the verdict or finding of guilty").[5]

Now that we have determined that the time for exercising due diligence began when Williams was sentenced on the federal charge, the question is whether Williams in fact exercised due diligence. We are constrained to answer that question in the negative.

Williams was sentenced in August 1999, but it was not until April 2003 that he filed his state-court motion seeking modification of his prior convictions. Williams has known since he was indicted that the government would seek to rely on his state drug convictions to enhance his sentence, and Williams clearly understood the significance of the enhancement, given that he raised various challenges to the use of the convictions in his prior appeals to this court. Notwithstanding the obvious significance of the prior convictions to his federal court sentence, Williams waited more than three-and-a-half years before challenging the convictions in state court.

It is worth remembering that the "new evidence" at issue here is a retroactive modification of the convictions that was obtained by Williams and solely at his behest. No new information about the state convictions came to Williams after his federal conviction;

_____

[5]Prior to 1998, the time for filing a new-trial motion based on newly discovered evidence ran from the time of "final judgment," which was interpreted to refer to action at the appellate level. See Fed. R. Crim. P. 33, Adv. Comm. Notes to 1998 amendments.

14

the modification of the convictions was based on facts that Williams knew at least by the time of the federal sentencing, if not years earlier when he pleaded guilty to the state drug charges. Given the ease with which the modification was obtained (it was granted the same day the motion was filed), we can only assume that Williams could have obtained modification at any earlier point in the federal proceeding, if he had only bothered to ask.

To be sure, there is evidence in the record showing that Williams took some limited action within a few months after he was sentenced on the federal charge. In January 2000, Williams filed a motion in state court seeking a transcript of the state proceedings. That request was denied in February 2000 because Williams had not sufficiently explained why he needed the transcript. In March 2000, Williams sought reconsideration of denial, explaining that he needed the transcripts because he was "in the process of drafting a petition to attack his prior [state] convictions." The North Carolina court denied the request for reconsideration. As far as the record reveals, Williams' efforts then came to a halt, to finally be revived in April 2003. We simply cannot conclude that requesting a transcript (which, so far as the record reveals, was not necessary to obtaining the modification of the state convictions)[6] and then abandoning the

---

[6]In his motion seeking modification of the state convictions, Williams alleged that his attorney informed him that the offenses "would thereafter be considered as a single offense for future

15

effort for three years amounts to the exercise of due diligence in seeking a modification of his state convictions.

Because Williams waited more than three years after he was sentenced to seek a modification of his state drug convictions, we conclude that he failed to exercise due diligence as required by the newly-discovered evidence exception to the mandate rule. See Johnson, 125 S. Ct. at 1582 (concluding that defendant who waited more than three years after federal sentencing to seek the vacatur of state convictions did not exercise due diligence).[7] And because Williams cannot satisfy the requirement for the newly-discovered evidence exception, the district court properly adhered to our mandate and properly refused to consider the evidence of Williams' modified state convictions.

---

sentencing purposes." J.A. 44. The motion included no reference to any part of the transcript of the prior proceedings. Moreover, we note that Williams does not argue on appeal that the transcript was necessary for the modification request or that his delay in seeking the modification was caused by a delay in obtaining the transcript.

[7]The government contends that the modification obtained by Williams, which reduced the drug-sales charges to drug-possession charges, is nothing more than a "twelve-year-delayed plea bargain." Appellee's Supplemental Brief at 5. The government seems to suggest that this kind of retroactive plea-bargaining should not affect Williams' designation as an armed career criminal as would an order vacating a predicate state conviction. Given our conclusion that Williams does not meet the requirements of the newly-discovered evidence exception to the mandate rule, we need not consider this argument.

16

In a supplemental filing, Williams contends that his sentence was imposed in violation of his Sixth Amendment rights as set forth in Blakely v. Washington, 542 U.S. 296 (2004) and United States v. Booker, 125 S. Ct. 738 (2005). Because Williams raises the issue for the first time on appeal, we review for plain error only. See United States v. Hughes, 401 F.3d 540, 547 (4th Cir. 2005).

In Booker, the Supreme Court held that the Sixth Amendment is violated when a district court imposes a sentence under the Sentencing Guidelines that is greater than the maximum sentence authorized by the facts found by the jury alone. See Booker, 125 S. Ct. at 756. Although Williams' presentence report included certain fact-based enhancements to his base offense level, those enhancements were mooted by the designation of Williams as an armed career criminal, a designation that carries with it a higher base offense level under the Guidelines. See U.S.S.G. § 4B1.4(b). Because the fact-based enhancements were not applied, there is no Sixth Amendment violation in that regard. To the extent that Williams contends his designation as an armed career criminal violates the Sixth Amendment, the argument fails, because the facts necessary to support the ACCA enhancement were inherent in the fact of the predicate convictions. See United States v. Thompson, 421 F.3d 278, 283 (4th Cir. 2005) (concluding that enhanced sentencing under the ACCA does not amount to a Booker error if "the facts

17

necessary to support the enhancement inhere in the fact of conviction"); United States v. Cheek, 415 F.3d 349, 354 (4th Cir. 2005) (concluding that a district court's reliance on a defendant's prior convictions to support an enhanced sentence under the ACCA does not violate the Sixth Amendment).  Williams' Sixth Amendment challenges to his sentence are therefore without merit.[8]

## IV.

For the foregoing reasons, the district court's order sentencing Williams to 293 months imprisonment is hereby affirmed.

AFFIRMED

---

[8]Williams does not object to his sentence on the grounds that the district court erred by treating the Guidelines as mandatory. See United States v. White, 405 F.3d 208, 216 (4th Cir. 2005).

18