# United States Court of Appeals

## For the First Circuit

No. 09-2258

UNITED STATES OF AMERICA,

Appellee,

v.

LARRY MATTHEWS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Boudin, Circuit Judge,
Souter,* Associate Justice,
and Selya, Circuit Judge.

William A. Hahn, with whom Hahn & Matkov was on brief, for
appellant.
Sandra S. Bower, Assistant United States Attorney, with whom
Carmen M. Ortiz, United States Attorney, was on brief, for
appellee.

April 29, 2011

_____

*Hon. David H. Souter, Associate Justice (Ret.) of the Supreme
Court of the United States, sitting by designation.

**SELYA**, **Circuit Judge**. In this appeal, defendant-appellant Larry Matthews attempts to challenge a sentencing enhancement imposed pursuant to the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). We conclude that the law of the case doctrine bars the attempted challenge.

The background facts are catalogued in considerable detail in our earlier opinion in this case, see United States v. Matthews (Matthews I), 498 F.3d 25, 29-30 (1st Cir. 2007), and we assume the reader's familiarity with that account. We rehearse here only those facts needed to bring the law of the case issue into focus.

In 2004, a jury convicted the defendant on a charge of being a felon in possession of a firearm and ammunition. See 18 U.S.C. § 922(g)(1). At sentencing, the district court applied an ACCA enhancement, thus triggering a mandatory minimum sentence of fifteen years. Id. § 924(e)(1). The enhancement rested on the court's subsidiary finding that the defendant had three prior convictions for violent felonies or serious drug offenses. This array included a 1996 conviction for assault and battery with a dangerous weapon, a 1995 drug-trafficking conviction, and a 1992 juvenile adjudication for assault and battery. Matthews I, 498 F.3d at 32 n.5. The defendant conceded (then and now) that the first two predicates were properly counted. Consequently, we concentrate on the juvenile adjudication.

With respect to the juvenile adjudication, the crucial question was whether the defendant, in committing this offense, had used a knife. The government tried to prove this point through a police report. Relying on that report, the sentencing court answered the "knife" question in the affirmative and ruled that the juvenile adjudication qualified as an ACCA predicate.

In his ensuing appeal, the defendant challenged both his conviction and his sentence. See id. at 30. With respect to the juvenile adjudication, he argued categorically that juvenile adjudications should not be counted as ACCA predicates and that, in all events, the facts relating to this particular adjudication should have been proven to a jury as required by the holding in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). He did not, however, take issue with the method by which the government had proved the facts related to the juvenile adjudication (i.e., through the use of a police report). We rejected all of the defendant's arguments and, on August 7, 2007, affirmed his conviction and sentence. Matthews I, 498 F.3d at 37.

The defendant filed an untimely petition for rehearing and rehearing en banc on September 21, 2007. See Fed. R. App. P. 35(c), 40(a)(1). We summarily denied the late petition. The

defendant then unsuccessfully sought certiorari.[1] <u>Matthews</u> v. <u>United States</u>, 552 U.S. 1238 (2008).

In 2009, the defendant invoked the federal habeas statute, 28 U.S.C. § 2255, and moved to vacate, set aside, or correct his sentence. After some preliminary skirmishing (not relevant here), the district court granted the motion in part and convened a new sentencing hearing. The government renewed its quest for the ACCA enhancement but, instead of relying exclusively on the police report to prove the nature of the juvenile adjudication, introduced copies of various juvenile court documents obtained from the files of the Massachusetts Department of Youth Services. The district court admitted these exogenous documents into evidence and also allowed explanatory testimony. The court then used the juvenile adjudication along with the defendant's other two convictions to ground an ACCA enhancement. It thereafter imposed the same mandatory minimum sentence. This timely appeal followed.

---

[1] In his untimely rehearing petition, the defendant for the first time asserted a claim that the method by which the government had proven the facts associated with the juvenile adjudication was improper. He reasserted that claim in his certiorari petition. These efforts were too late to preserve the claim. <u>See</u> <u>Am. Policyholders Ins. Co.</u> v. <u>Nyacol Prods., Inc.</u>, 989 F.2d 1256, 1264 (1st Cir. 1993) (explaining that "a party may not raise new and additional matters for the first time in a petition for rehearing"); <u>see</u> <u>also</u> <u>Glover</u> v. <u>United States</u>, 531 U.S. 198, 205 (2001) (discussing same principle in certiorari context).

In our view, this appeal turns on an application of the law of the case doctrine. The defendant disagrees: he argues that the law of the case issue is not properly before us because it is not listed in the statement of issues on appeal. See Fed. R. App. P. 28(a)(5). This argument is hopeless. In the absence of a cross-appeal — and none is needed here — an appellee is not required to file a statement of issues. See Fed. R. App. P. 28(b)(2). Rather, an appellee may defend a favorable judgment on any ground made apparent by the record.[2] Mass. Mut. Life Ins. Co. v. Ludwig, 426 U.S. 479, 481 (1976); United States v. Craven, 239 F.3d 91, 97 (1st Cir. 2001). Thus, we proceed to consider the government's threshold argument.

Writ large, the law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983). This means that "a legal decision made at one stage of a civil or criminal case, unchallenged in a subsequent appeal despite the existence of ample opportunity to do so, becomes the law of the case for future stages of the same litigation." United States v. Bell, 988 F.2d 247, 250 (1st Cir. 1993). In other words, the doctrine bars a party from resurrecting issues that either were, or

---

[2] In any event, a court may raise law of the case issues sua sponte. See United States v. Wallace, 573 F.3d 82, 90 n.6 (1st Cir. 2009).

could have been, decided on an earlier appeal. See United States v. Connell, 6 F.3d 27, 30 (1st Cir. 1993). "[T]he aggrieved party is deemed to have forfeited any right to challenge that particular decision at a subsequent date." Bell, 988 F.2d at 250.

This salutary approach safeguards "the finality and efficiency of the judicial process by protecting against the agitation of settled issues." Christianson v. Colt Indus. Oper. Corp., 486 U.S. 800, 816 (1988) (internal quotation marks omitted). The result is a sturdier, more stable decisionmaking process. See United States v. Rivera-Martínez, 931 F.2d 148, 151 (1st Cir. 1991); see also Ellis v. United States, 313 F.3d 636, 647 (1st Cir. 2002) (explaining that "the law of the case doctrine affords litigants a high degree of certainty as to what claims are — and are not — still open for adjudication").

The law of the case doctrine has two branches. The first branch — known colloquially as the mandate rule — "prevents relitigation in the trial court of matters that were explicitly or implicitly decided by an earlier appellate decision in the same case." United States v. Moran, 393 F.3d 1, 7 (1st Cir. 2004).

The second branch of the doctrine binds a "successor appellate panel in a second appeal in the same case" to honor fully the original decision. Id. This branch "contemplates that a legal decision made at one stage of a criminal or civil proceeding should remain the law of that case throughout the litigation, unless and

until the decision is modified or overruled by a higher court." Id. Whether the doctrine applies in a specific instance is a question of law, engendering de novo review. Negrón-Almeda v. Santiago, 579 F.3d 45, 50 (1st Cir. 2009); Harlow v. Children's Hosp., 432 F.3d 50, 55 (1st Cir. 2005).

We turn now from the general to the specific. At the time of the defendant's initial sentencing hearing, the Supreme Court had already granted certiorari in Shepard v. United States, 542 U.S. 981 (2004), which involved a challenge to the method of proving ACCA predicate convictions. Shepard by then had been briefed or argued, and the contours of the issue were clearly delineated. Yet when the government sought to prove the nature of the juvenile adjudication at issue here through a police report, the defendant made no contemporaneous objection.

Shortly thereafter — and well before the defendant's direct appeal was briefed or argued — the Supreme Court decided Shepard. See Shepard v. United States, 544 U.S. 13 (2005). This decision clarified the method through which a predicate conviction could be proved under the ACCA and forbade the use of a police report for that purpose. See id. at 21, 26. This decision should not have come as a surprise. Beforehand (and prior to the defendant's sentencing) several courts had expressed doubt about the use of police reports to prove predicate convictions, signaling that such a tactic would offend Apprendi principles (and, thus,

offend the Constitution).  See, e.g., United States v. Allen, 282 F.3d 339, 342-43 (5th Cir. 2002); United States v. Sparks, 265 F.3d 825, 837 (9th Cir. 2001).  While this court had held to the contrary, see United States v. Shepard, 348 F.3d 308, 314 (1st Cir. 2003), rev'd sub nom., Shepard v. United States, 544 U.S. 13 (2005),[3] that did not excuse a party wishing to preserve the issue from raising it.  See, e.g., Bousley v. United States, 523 U.S. 614, 622-23 (1998); United States v. Lopéz-Peña, 912 F.2d 1542, 1546 (1st Cir. 1989); see also Barreto-Barreto v. United States, 551 F.3d 95, 101 (1st Cir. 2008).  The claim of error was readily available, and "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it" is not enough to revive a defaulted claim. Murray v. Carrier, 477 U.S. 478, 486-87 (1986).

The defendant obviously knew about the Supreme Court's Shepard decision (he cited it in his opening brief in Matthews I, albeit for a different proposition), but failed to mount a claim of Shepard error.  Nor did he seek reconsideration of the sentence in the district court.  His belated efforts to repair these omissions in an untimely rehearing petition and in a subsequent certiorari filing were too late and too little.  See supra note 1.  We have warned that "[t]he law ministers to the vigilant not to those who

_____

[3] Even within this circuit, skepticism had been voiced.  See United States v. Delgado, 288 F.3d 49, 57 (1st Cir. 2002) (Selya, J., concurring).

-8-

sleep upon perceptible rights." Puleio v. Vose, 830 F.2d 1197, 1203 (1st Cir. 1987). So it is here: having defaulted the claim of Shepard error the first time around, the defendant cannot, absent some exceptional circumstance, resurrect it now. See, e.g., United States v. Ellis, 619 F.3d 72, 75 (1st Cir. 2010) (per curiam); Peralta v. United States, 597 F.3d 74, 84 & n.12 (1st Cir. 2010) (per curiam); see also Connell, 6 F.3d at 30 (warning that "litigants should not ordinarily be allowed to take serial bites at the appellate apple").

This is not quite the end of the matter. The law of the case doctrine is not a "straitjacket for a court." Morgan v. Burke, 926 F.2d 86, 91 (1st Cir. 1991). There is a modest amount of play in the joints. See Arizona, 460 U.S. at 618. Withal, these law of the case principles should not "be lightly shrugged aside," Rivera-Martínez, 931 F.2d at 151, and in the absence of exceptional circumstances, a court should apply the doctrine according to its tenor. Connell, 6 F.3d at 31.

Such exceptional circumstances are rare and narrowly circumscribed. A party may avoid the application of the law of the case doctrine only by showing that, in the relevant time frame, "controlling legal authority has changed dramatically"; or by showing that "significant new evidence, not earlier obtainable in the exercise of due diligence," has come to light; or by showing that the earlier decision is blatantly erroneous and, if

uncorrected, will work a miscarriage of justice. <u>Bell</u>, 988 F.2d at 251; <u>see</u> <u>Rivera-Martínez</u>, 931 F.2d at 151 (collecting cases); <u>White</u> v. <u>Murtha</u>, 377 F.2d 428, 432 (5th Cir. 1967) (cited with approval in <u>Arizona</u>, 460 U.S. at 618 n.8). This case does not qualify for the exception.

We can summarily dismiss the last two categories. On the facts here, there is no practical reason to doubt that the defendant used a knife when he committed the offense that underpinned the juvenile adjudication. Similarly, the defendant does not argue that there is any new, previously unavailable evidence that would benefit his position.

This leaves the first category, which requires an intervening change in controlling legal authority. The defendant relies on the <u>Shepard</u> decision to show such a change. This reliance is misplaced.

To begin, we doubt that <u>Shepard</u> can be said to constitute an <u>intervening</u> change in the law. After all, the circuits were split on the point at the time of the defendant's original sentencing, and the legal theory undergirding a claim of <u>Shepard</u> error was readily available to him. Moreover, the Supreme Court decided <u>Shepard</u> before the defendant's appeal in <u>Matthews I</u> was briefed or argued and before his sentence became final and unappealable. The fact that <u>Shepard</u> was newly decided in that time frame, without more, does not trigger the exception. <u>See</u> <u>Kashner</u>

Davidson Sec. Corp. v. Mscisz, 601 F.3d 19, 23 & n.5 (1st Cir. 2010); Doe v. Chao, 511 F.3d 461, 467 (4th Cir. 2007).

If more were needed — and we do not think that it is — we note that the defendant's present claim arises in the section 2255 context. The exceptions to the law of the case doctrine must be applied with special caution on collateral review. See United States v. Addonizio, 442 U.S. 178, 184 (1979) (explaining that it has "long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment"); Ellis, 313 F.3d at 647 (noting that concerns underlying the law of the case doctrine "are heightened in the federal habeas context"). Allowing the defendant to raise a new argument in a habeas petition when he could (and should) have raised it either at his original sentencing or on direct review or both would undermine the prudential goals of the law of the case doctrine. See Peoples v. United States, 403 F.3d 844, 846-47 (7th Cir. 2005); United States v. Moran, 107 F.3d 1 (1st Cir. 1997) (per curiam) (table).

We need go no further. Although the defendant makes additional arguments — that the failure to prove the juvenile adjudication to a jury offended Apprendi principles, see Shepard, 544 U.S. at 26-27 (Thomas, J., concurring), and that juvenile adjudications should never count as ACCA predicate convictions, see Welch v. United States, 604 F.3d 408, 432 (7th Cir. 2010) (Posner,

-11-

J., dissenting) — he concedes that these plaints are foreclosed by circuit precedent.  See, e.g., Ellis, 619 F.3d at 74; Matthews I, 498 F.3d at 33, 35.  The short of it is that the defendant had a full and fair opportunity to raise his claim of Shepard error both at his original sentencing and on direct review.  He did not do so.  Consequently, he should not have been allowed to raise a belated Shepard claim on collateral review.

This holding confronts us with a procedural anomaly.  The district court erred both in entertaining the defaulted claim of Shepard error and in vacating the original sentence on that ground.  Yet, after conducting a new sentencing hearing, the court imposed a sentence identical to the vacated sentence.  Given this outcome, it would be senseless to force the district court and the parties round and round the mulberry bush for no other reason than an insistence on ceremonial punctiliousness.  Cf. Gibbs v. Buck, 307 U.S. 66, 78 (1939) (terming it "useless" to reverse and remand where, after appeal was filed, district court corrected its own error); Jusino v. Zayas, 875 F.2d 986, 990 (1st Cir. 1989) (observing that any error from district court's grant of a motion for reconsideration over which it lacked jurisdiction was harmless because the court of appeals would have remanded case anyway).  Thus, we take a pragmatic course, treat the district court's errors as harmless, and simply leave the new sentence in place.

**Affirmed**.