# United States Court of Appeals
## For the First Circuit

No. 15-2070

UNITED STATES OF AMERICA,

Appellee,

v.

EDWIN OMAR ALMONTE-NÚÑEZ,

Defendant-Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Torruella, Dyk,[*] and Thompson,
Circuit Judges.

Michael M. Brownlee, with whom The Brownlee Law Firm, P.A.
was on brief, for appellant.
John P. Taddei, Attorney, Criminal Division, Appellate
Section, U.S. Department of Justice, with whom W. Stephen Muldrow,
United States Attorney, Mariana E. Bauzá-Almonte, Assistant United
States Attorney, Chief, Appellate Division, and Julia M.
Meconiates, Assistant United States Attorney, were on brief, for
appellee.

June 18, 2020

* Of the Federal Circuit, sitting by designation.

**DYK, Circuit Judge.** Edwin Omar Almonte-Núñez appeals convictions and sentences imposed by the United States District Court for the District of Puerto Rico for robbing an individual of a United States passport in violation of 18 U.S.C. § 2112, brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii), and possessing a firearm in violation of 18 U.S.C. § 922(g)(1) (possession by a convicted felon). We affirm.

## I.

This case returns to this court after resentencing following the decision in United States v. Almonte-Núñez ("Almonte I"), 771 F.3d 84 (1st Cir. 2014).

As recounted in the earlier decision, on September 30, 2011, Almonte unlawfully entered the residence of a 78-year-old widow. During this home invasion, Almonte brandished and aimed towards the victim a loaded pistol, threatened to shoot her, twice struck her in the face with the pistol, and kicked her after she fell to the ground. The victim suffered grievous injuries, including the loss of her right eye. Almonte was thereafter arrested by Puerto Rico police officers after a high-speed car chase.

As relevant to this appeal, the Commonwealth of Puerto Rico court charged Almonte with two counts of violating the Puerto Rico Weapons Act: carrying and using a firearm without a license

- 2 -

("Commonwealth count 1") and discharging or pointing a firearm at another person ("Commonwealth count 2"). Almonte pled guilty to those charges and on June 6, 2012, was sentenced to ten years and two years of imprisonment for each count, respectively, to be served consecutively.

Thereafter, a federal grand jury returned an indictment charging Almonte with robbing the victim of her United States passport in violation of 18 U.S.C. § 2112 ("federal count 1"), brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) ("federal count 2"), and possessing a firearm in violation of 18 U.S.C. § 922(g)(1) (possession by a convicted felon) ("federal count 3"). On December 12, 2012, Almonte pled guilty to his federal charges. On June 14, 2013, the district court sentenced him to 150 months for federal counts 1 and 3, to be served concurrently, and 84 months for federal count 2, to be served consecutively with his sentence for federal counts 1 and 3.

Almonte appealed his federal sentence, arguing that his 150-month sentence for federal count 3 exceeded the statutory maximum. Almonte I, 771 F.3d at 91. This court held that Almonte's sentence "constituted clear and obvious error" because it exceeded the "maximum level of imprisonment [of 120 months] established by Congress" under 18 U.S.C. § 924(a)(2), and remanded to the district court with directions "to enter a modified sentence

of 120 months on [federal count 3]." Id. at 91-92.

On August 21, 2015, the district court conducted a sentencing hearing in accordance with the remand order. At the resentencing hearing, Almonte twice expressed a concern that he was not "being adequately represented [by] [his] counsel," because of his belief that he was supposed to be resentenced for time served. App'x 55, 59. Almonte's counsel explained that there was "nothing in [the remand order] that would lea[d] one to believe that [he was supposed to be sentenced for time served]." App'x 57. The district court stated that the issue was waived because Almonte had not raised it in the first appeal. The district court modified Almonte's sentence for federal count 3 to 120 months and ordered that Almonte's federal sentence be served concurrently with the sentence imposed by the Commonwealth.

Almonte now appeals the sentence imposed at his resentencing. In his opening brief, he argues that (1) the district court failed to inquire into his request for substitution of new counsel and (2) his conviction for federal count 1 under 18 U.S.C. § 2112 did not constitute a predicate "crime of violence" under 18 U.S.C. § 924(c)(3)(A) for his conviction for federal count 2 under 18 U.S.C. § 924(c)(1)(A)(ii) and that § 924(c)(3)(B) was unconstitutionally vague under the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015). Before the government filed its responsive brief, the Supreme Court decided

- 4 -

Puerto Rico v. Sánchez Valle, 136 S. Ct. 1863 (2016), holding that under the Double Jeopardy Clause of the Fifth Amendment, the Commonwealth of Puerto Rico and the United States were not separate sovereigns. Id. at 1876. This court ordered the parties to file supplemental briefs addressing whether Almonte's federal convictions were barred by the Double Jeopardy Clause under Sánchez Valle. After briefing had concluded, the Supreme Court decided United States v. Davis, 139 S. Ct. 2319 (2019), which held that 18 U.S.C. § 924(c)(3)(B) ("the residual clause") was unconstitutionally vague. Id. at 2336. This court again ordered supplemental briefing from the parties, this time to address the effect of Davis on Almonte's conviction for federal count 2.

**II.**

A.

The government urges that Almonte's arguments are barred by the law of the case doctrine. "Writ large, the law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" United States v. Matthews, 643 F.3d 9, 12 (1st Cir. 2011) (quoting Arizona v. California, 460 U.S. 605, 618 (1983)). "[A] legal decision made at one stage of a civil or criminal case, unchallenged in a subsequent appeal despite the existence of ample opportunity to do so, becomes the law of the case for future stages of the same litigation." United

States v. Bell, 988 F.2d 247, 250 (1st Cir. 1993). This doctrine "bars a party from resurrecting issues that either were, or could have been, decided on an earlier appeal." Matthews, 643 F.3d at 12-13.

"The law of the case doctrine has two branches. The first branch--known colloquially as the mandate rule--'prevents relitigation in the trial court of matters that were explicitly or implicitly decided by an earlier appellate decision in the same case.'" Id. at 13 (emphasis added) (quoting United States v. Moran, 393 F.3d 1, 7 (1st Cir. 2004)). "The second branch of the doctrine binds a 'successor appellate panel in a second appeal in the same case' to honor fully the original decision" and, with some limited exceptions, "contemplates that a legal decision made at one stage of a criminal or civil proceeding should remain the law of that case throughout the litigation, unless and until the decision is modified or overruled by a higher court." Id. (quoting Moran, 393 F.3d at 7). Under this doctrine, "[the appellate court] need not and do[es] not consider a new contention that could have been but was not raised on the prior appeal." AngioDynamics, Inc. v. Biolitec AG, 823 F.3d 1, 4 (1st Cir. 2016) (quoting United States v. Arreguin, 735 F.3d 1168, 1178 (9th Cir. 2013)); see also M. v. Falmouth Sch. Dep't, 875 F.3d 75, 78 (1st Cir. 2017) ("The district court correctly concluded that . . . introducing a claim that could have been raised [in the previous appeal] would be

- 6 -

inappropriate.").

The government argues that both the district court and this court are bound by the law of the case because "the sole purpose of the remand was to impose a 120-month sentence for [federal count 3] so that it would not exceed the statutory maximum for that [c]ount."  Government's Br. 9-10 (citing Almonte I, 771 F.3d at 92-93).  The government suggests that unless this court "expressly directed otherwise, [the] district court [could] only consider new arguments or facts on remand that [were] made relevant by the Court of Appeals decision."  Id. at 10 (citing United States v. Cruzado-Laureano, 527 F.3d 231, 235 (1st Cir. 2008)).

The government relies on United States v. Santiago-Reyes, 877 F.3d 447 (1st Cir. 2017), which stated that the mandate rule "generally requires that a district court conform with the remand order from an appellate court."  Id. at 450 (quoting United States v. Ticchiarelli, 171 F.3d 24, 31 (1st Cir. 1999)).  However, Santiago-Reyes did not purport to overturn the longstanding First Circuit precedent that "[the mandate] rule cannot apply" to "issue[s] [that] could not have been raised on the appeal from the original sentence."  United States v. Bryant, 643 F.3d 28, 34 (1st Cir. 2011).  "Whatever [the mandate rule] may preclude as to arguments that were made and lost or should have been made but were not, it can hardly extend to arguments that a party could not reasonably have been expected to make in the prior sentencing."

- 7 -

Id. at 33–34; see also Matthews, 643 F.3d at 14; United States v. García-Ortiz, 904 F.3d 102, 106 (1st Cir. 2018).

B.

Almonte's first argument is that the district court erred when it failed to inquire into his request for substitution of counsel. The government urges that Almonte's argument is barred by the mandate rule. We conclude that Almonte's argument is not barred because it concerns an issue that arose for the first time in the resentencing hearing. See Bryant, 643 F.3d at 34.

We nonetheless conclude that the district court did not abuse its discretion in denying Almonte's request for substitution of counsel. When reviewing a district court's denial of a request for substitution of counsel, this court "considers not only the adequacy of the [district] court's inquiry but also factors such as the timeliness of the motion for substitution and the nature of the conflict between lawyer and client." United States v. Myers, 294 F.3d 203, 207 (1st Cir. 2002). "The extent and nature of the inquiry may vary in each case; it need not amount to a formal hearing." United States v. Woodard, 291 F.3d 95, 108 (1st Cir. 2002). "We . . . limit our focus to whether, in light of the then-existing circumstances, the court erred in denying the motion." United States v. Pierce, 60 F.3d 886, 891 (1st Cir. 1995) (reviewing an "analogous" challenge to a district court's denial of a motion to withdraw as counsel).

- 8 -

Here, the untimeliness of Almonte's request weighs against finding that the district court abused its discretion. Almonte's request was made five months after this court's decision in Almonte I, and he does not provide any explanation for the delay. See Woodard, 291 F.3d at 108 (holding that a request for substitution of counsel was untimely when made "several months" after a conflict was known and with "no explanation for why [the defendant] did not complain earlier").

Further, Almonte's only ground for requesting substitute counsel was the theory that he should have been sentenced for time served. At the resentencing hearing, Almonte stated: "I don't feel I am being adequately represented with this counsel." App'x 55. Almonte's trial counsel explained that Almonte had thought that he was being resentenced "for credit for time served," but that there appeared to be no "legal argument to be made for why [Almonte] should be credit[ed] for time served." App'x 57-58. The district court agreed, and further stated that Almonte had waived this issue by failing to raise it in his first appeal. When the district court asked Almonte if he wanted to make an allocution, Almonte stated: "I don't feel that I'm being adequately represented with this attorney. When I was sentenced the first time, the circuit wrote and said that [the district court] did not count the points for the state cases." App'x 59. Notably, when prompted for further explanation by the district

- 9 -

court, Almonte stated "[t]hat's it," and provided no further justification for his request for substitution of counsel. Id. When Almonte made his request for new counsel, "the trial court . . . conduct[ed] an appropriate inquiry into the source of the defendant's dissatisfaction with his counsel," United States v. Díaz-Rodríguez, 745 F.3d 586, 590 (1st Cir. 2014), in order to ascertain whether the court had "good cause for rescinding the original appointment and interposing a new one." Myers, 294 F.3d at 206. Here, Almonte did not show good cause for the appointment of substitute counsel.

On appeal, Almonte asserts for the first time two additional justifications for his request. First, he argues that his trial counsel failed to raise an objection to his initial sentence that exceeded the statutory maximum. But, as Almonte concedes, that issue was rectified by this court's decision in Almonte I. Second, he argues that his trial counsel's failure to raise an argument under Johnson, 135 S. Ct. 2551, subjects his conviction under federal count 2 to plain error review before this court. But, as we discuss below, there was simply no error here under the Davis/Johnson argument. We have no basis to conclude that the district court abused its discretion by failing to consider these concerns, since Almonte never raised them before the district court. Furthermore, neither of these reasons is sufficient to compel substitution of counsel, even if they had

- 10 -

been raised at the resentencing hearing.  See Woodard, 291 F.3d at 108 ("[T]he defendant must provide the court with a legitimate reason for his loss of confidence."  (quoting United States v. Allen, 789 F.2d 90, 93 (1st Cir. 1986))).

We conclude that the district court did not abuse its discretion by denying Almonte's request for substitution of counsel.

## C.

We next address the government's contention that Almonte's remaining arguments, i.e., that his robbery conviction under 18 U.S.C. § 2112 is not a predicate "crime of violence" under Davis and that his federal sentence violates the Double Jeopardy Clause under Sánchez Valle, are barred by the law of the case doctrine.  "A party may [also] avoid the application of the law of the case doctrine . . . by showing that, in the relevant time frame, 'controlling legal authority has changed dramatically.'" Matthews, 643 F.3d at 14 (quoting Bell, 988 F.2d at 251).  In criminal cases, "when the law changes between the time of a lower court ruling and the time a subsequent appeal is heard, objections not interposed before the lower court are deemed forfeited and are reviewed for plain error."  United States v. McIvery, 806 F.3d 645, 651 (1st Cir. 2015) (citing Johnson v. United States, 520 U.S. 461, 466-70 (1997)); and United States v. Barone, 114 F.3d 1284, 1294 (1st Cir. 1997)); see also Fed. R. Crim. P. 52(b).

- 11 -

"[W]here the law at the time of trial was settled and clearly contrary to the law at the time of appeal[,] it is enough that an error be 'plain' at the time of appellate consideration." Henderson v. United States, 568 U.S. 266, 273 (2013) (second alteration in original) (quoting Johnson, 520 U.S. at 468). Conversely, there can be no plain error when the law is unsettled. See United States v. Delgado-Sánchez, 849 F.3d 1, 11 (1st Cir. 2017); Connelly v. Hyundai Motor Co., 351 F.3d 535, 546 (1st Cir. 2003).

The law of the case doctrine is not a bar to Almonte's arguments.

## D.

Almonte argues that his sentence under § 924(c)(1)(A)(ii) must be vacated in light of the Supreme Court's decision in Davis. Section 924(c)(3) provides two alternative definitions of "crime of violence":

> (A) [a felony that] has as an element the use, attempted use, or threatened use of physical force against the person or property of another [the "force clause"], or
>
> (B) [a felony] that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense [the "residual clause"].

18 U.S.C. § 924(c)(3).

Before the Supreme Court's Davis decision, a defendant

- 12 -

could be convicted for violating § 924(c)(1)(A)(ii) if he or she had committed a predicate "crime of violence" under either definition in § 924(c)(3). The Supreme Court changed the law by holding in Davis, that the second definition, referred to as the "residual clause," § 924(c)(3)(B), was unconstitutionally vague. Davis, 139 S. Ct. at 2325, 2336. This left the "force clause," § 924(c)(3)(A), as the only operative definition of "crime of violence" in § 924(c).

In this case, Almonte's conviction under 18 U.S.C. § 2112 for robbery serves as the predicate "crime of violence" for his sentence under § 924(c)(1)(A)(ii). Almonte contends that a § 2112 offense is not a "crime of violence" under the force clause. Almonte relies on United States v. Bell, 158 F. Supp. 3d 906 (N.D. Cal. 2016), which held that § 2112 "[was] not categorically a crime of violence under the section 924(c)(3) force clause." Id. at 920-21.

But Bell is not binding on us and, in any case, was before the Supreme Court's decision in Stokeling v. United States, 139 S. Ct. 544 (2019). In Stokeling, the Supreme Court held that 18 U.S.C. § 924(e)(2)(B)(i) encompassed common law robbery offenses. 139 S. Ct. at 549-50, 555. Section 924(e)(2)(B)(i), involved in Stokeling, and section 924(c)(3)(A), involved here, are part of the same statutory section and use nearly identical language. Compare 18 U.S.C. § 924(c)(3)(A) (defining "crime of

- 13 -

violence" as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another"), with 18 U.S.C. § 924(e)(2)(B)(i) (defining a "violent felony" as a felony crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another"). The Supreme Court itself has acknowledged the similarity between the definitions. See Davis, 139 S. Ct. at 2325-26 (stating that § 924(e)(2)(B)(ii) bore "more than a passing resemblance to § 924(c)(3)(B)"). "And [courts] normally presume that the same language in related statutes carries a consistent meaning." Id. at 2329. Thus, if § 924(e)(2)(B)(i) encompasses common law robbery offenses, then so too must § 924(c)(3)(A). The Eighth Circuit has reached the same conclusion. United States v. Morris, 775 F. App'x 828, 828 (8th Cir. 2019). There is no question that the § 2112 robbery offense (on which the defendant was convicted) is defined as a common law robbery offense. See Carter v. United States, 530 U.S. 255, 267 n.5 (2000) (explaining that § 2112 "leav[es] the definition of [robbery] to the common law"). Thus, Almonte's challenge to his conviction on federal count 2 fails as such conviction was not erroneous, much less plainly erroneous.

The defendant argues that resentencing is still required because the district court did not specify which subsection it was relying on, and the residual clause has now been held

- 14 -

unconstitutional. The court's decision in García-Ortiz rejected a similar contention. In García-Ortiz, the defendant asserted that his Hobbs Act robbery conviction under 18 U.S.C. § 1951(a) was not a predicate "crime of violence" under § 924(c)(3). García-Ortiz, 904 F.3d at 104. The district court in that case did not address which clause of § 924(c)(3) it relied on. See id. at 106 ("At the time of García's conviction, there was apparently little reason to doubt that such an offense satisfied the definition of a crime of violence contained in the residual clause of section 924(c) . . . ."). The defendant argued that the residual clause was unconstitutionally vague, and that his Hobbs Act robbery conviction was not a "crime of violence" under the force clause. Id. at 105. This court held that "any possible infirmity of section 924(c)'s residual clause provide[d] [the defendant] with no exculpation because his . . . robbery still qualifie[d] as a crime of violence under the force clause of section 924(c)." Id. at 106; see also United States v. Valdés-Ayala, 900 F.3d 20, 44–45 (1st Cir. 2018) (reaching a similar result when a district court order "did not specify" which of two statutory sections for mandatory and discretionary restitution it relied on, on the basis that it was proper under the mandatory restitution statute). The same is true here.

### E.

Almonte next argues that his federal convictions must be

- 15 -

vacated under Sánchez Valle.  The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense."  Brown v. Ohio, 432 U.S. 161, 165 (1977) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969)).  "But two prosecutions, [the Supreme] Court has long held, are not for the same offense if brought by different sovereigns--even when those actions target the identical criminal conduct through equivalent criminal laws."  Sánchez Valle, 136 S. Ct. at 1870.  In Sánchez Valle, the Supreme Court held that the Commonwealth of Puerto Rico and the United States were not separate sovereigns for the purpose of double jeopardy analysis.  Id. at 1876.

There are limited exceptions under which a defendant may make a collateral attack on a guilty plea.  United States v. Broce, 488 U.S. 563, 574 (1989).  Broce set out the standard for double jeopardy challenges to a conviction following a knowing and voluntary plea by the defendant.  Id. at 576.  Broce highlighted the significance of a guilty plea, explaining that "[b]y entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime," id. at 570, and cannot voluntarily do so without "possess[ing] an understanding of the law in relation to the facts," id. (quoting McCarthy v. United States, 394 U.S.

- 16 -

459, 466 (1969)).  Given the significance of a guilty plea and the admissions inherent within, "a guilty plea forecloses a double jeopardy claim unless 'on the face of the record, the court had no power to enter the conviction or impose the sentence.'"  United States v. Stefanidakis, 678 F.3d 96, 99 (1st Cir. 2012) (quoting Broce, 488 U.S. at 569).  A defendant must prove his claim by relying on the existing record and without contradicting the indictments or admissions inherent in the guilty plea.  Broce, 488 U.S. at 576.  This is a high threshold that is not easily met.[1]

Before Sánchez Valle, it was established in this circuit that the United States and the Commonwealth of Puerto Rico were separate sovereigns.  See, e.g., United States v. López Andino, 831 F.2d 1164, 1168 (1st Cir. 1987) ("[I]t is established that Puerto Rico is to be treated as a state for purposes of the double jeopardy clause."), overruled by Sánchez Valle, 136 S. Ct. at 1868.

_____

[1]    Here, Almonte unconditionally pleaded guilty to federal counts 1, 2, and 3, and he concedes that the record does not contain enough information to conclude that a double jeopardy violation occurred.  In fact, he concedes that he cannot discuss the test outlined in Blockburger v. United States, 284 U.S. 299 (1932), because "it depends on information outside of the record on appeal and outside of the district court record."  See Appellant's Reply Br. at 5.  Although this concession would ordinarily be fatal to his claim, as it makes evident that he cannot comply with the standard imposed in Broce, the government has not argued that Almonte's double jeopardy challenge should be rejected on these grounds.  Instead, the government has taken the opposite view, arguing that Almonte's PSR provides the information necessary to address (and reject) his double jeopardy claim on the merits.  We thus proceed to review his double jeopardy claim for plain error.

- 17 -

The Supreme Court has now held that "for purposes of the Double Jeopardy Clause, . . . the Commonwealth and the United States are not separate sovereigns." Sánchez Valle, 136 S. Ct. at 1876. We conclude that Sánchez Valle represents a dramatic "intervening change in controlling legal authority" that justifies an exception to the law of the case doctrine. Matthews, 643 F.3d at 14. We therefore address the merits of Almonte's double jeopardy claim under the applicable plain error standard.

Plain error requires four showings: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). Almonte cannot prove that the district court plainly erred in sentencing him in federal court despite his state convictions.

Almonte cannot satisfy the first two requirements for plain error because he cannot show that the court committed an error which was clear or obvious. We address three questions in a double jeopardy analysis: "(1) whether jeopardy ever attached; (2) whether the first proceeding was a decision on the merits; and (3) whether the subsequent proceeding involves the 'same offense.'" United States v. Szpyt, 785 F.3d 31, 36 (1st Cir. 2015). Because the parties' arguments center on the third question

of our double jeopardy analysis--"whether the subsequent proceeding involves the 'same offense,'" id.--we do the same.

Almonte argues that his federal firearm convictions must be vacated because the Commonwealth of Puerto Rico had already sentenced him "for the same criminal conduct." Appellant's First Supplemental Br. 3. Almonte's contention that Sánchez Valle stands for the proposition that a defendant cannot be tried in both Puerto Rico and federal courts for crimes arising from the same conduct or transaction misinterprets the Supreme Court's holding. Sánchez Valle merely held that the dual-sovereign doctrine does not bar a defendant from raising a double jeopardy claim when he is being subjected to successive prosecutions in Puerto Rico's local courts and federal courts for the same offense. By so deciding, the Supreme Court did not alter the framework for analyzing a double jeopardy claim under the Fifth Amendment. Our focus on double jeopardy claims continues to be determining whether the successive prosecutions are for the same offense (under equivalent criminal statutes). See Gamble v. United States, 139 S. Ct. 1960, 1965 (2019) (emphasizing that the language of the Fifth Amendment's double jeopardy clause "protects individuals from being twice put in jeopardy 'for the same offence,' not the same conduct or actions" (emphases in original) (citations omitted)). For that, we examine whether each of the offenses requires proof of a fact that the others do not. Blockburger v. United States, 284 U.S.

299, 304 (1932). Yet, Almonte does not even attempt to show that the charges for which he was convicted in federal court do not require different elements than those required to be proven for his state convictions. Thus, he cannot show that an error occurred, much less that a clear or obvious error occurred. The government, by contrast, has persuasively shown that Almonte's state and federal convictions were for different offenses.

"The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id. at 304. For two statutes to criminalize the same offense, "[t]he conduct described in one offense must necessarily include the conduct of the second offense." United States v. Gerhard, 615 F.3d 7, 19 (1st Cir. 2010) (citing Ball v. United States, 470 U.S. 856, 862 (1985)); United States v. Woodward, 469 U.S. 105, 107–08 (1985).

We begin with the federal § 922(g) offense. As relevant to this case, § 922(g) provides:

> It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g).

"To convict a defendant [under 18 U.S.C. § 922(g)], the [g]overnment . . . must show that the defendant knew he possessed a firearm and also that he knew he [was a prohibited person as contemplated by the statute] when he possessed it." Rehaif v. United States, 139 S. Ct. 2191, 2194 (2019). The government must also show that the firearm was "in or affecting interstate commerce." United States v. Combs, 555 F.3d 60, 65 (1st Cir. 2009).

According to the PSR, the Commonwealth court sentenced Almonte to 120 months of imprisonment for using a firearm without a license in violation of the Puerto Rico Weapons Act. This description makes clear that his conviction was under Article 5.04, which provides that "[a]ny person who transports any firearm or any part thereof without having a weapons license, or carries any firearm without the corresponding permit to carry weapons, shall be guilty of a felony." 25 L.P.R.A. § 458c (Article 5.04). Article 5.04 requires the Commonwealth to show that the defendant (1) transported or carried a firearm (2) without the corresponding state permit to carry weapons.

Section 922(g) does not require a showing that the defendant did not have a license, and Article 5.04 does not require proof that the defendant was a prohibited person or that the firearm was in or affecting interstate commerce. We conclude that

- 21 -

the federal § 922(g) offense and the Commonwealth Article 5.04 offense are separate offenses because each offense requires an element of proof that the other does not.  See Blockburger, 284 U.S. at 304.

We now address Almonte's federal § 924(c)(1)(A)(ii) offense.  Section 924(c) provides, in relevant part:

> [A]ny person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence . . . if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years.

18 U.S.C. § 924(c)(1)(A)(ii).

To establish a § 924(c)(1)(A)(ii) offense, the government must establish that the defendant "brandished" a firearm "during and in relation to," or "in furtherance of" a "federal 'crime of violence or drug trafficking crime.'"  Davis, 139 S. Ct. at 2324 (quoting 18 U.S.C. § 924(c)(1)(A)).

The Commonwealth offense was for violation of Article 5.15 of the Puerto Rico Weapons Act, which in the relevant part provides:

> [A] person shall be guilty of a felony if:
>
> (1) [h]e willfully discharges any firearm in a public place or any other place, although no injury results, or

> (2) he intentionally, although without malice aforethought, aims a weapon towards a person, although no injury results.

25 L.P.R.A. § 458n(a) (Article 5.15(a)).

This court has previously held that Article 5.15 is divisible, and thus defines "two alternative sets of elements for two different crimes": (1) "discharging" a firearm and (2) "pointing" or "aiming" a weapon towards another person. Delgado-Sánchez, 849 F.3d at 9. The PSR shows that Almonte was convicted of aiming a firearm at another person under Article 5.15(a)(2), rather than discharging a firearm under Article 5.15(a)(1).

The federal § 924(c)(1)(A)(ii) offense, unlike Article 5.15(a)(2), requires the proof of a predicate--i.e., separate--crime of violence or drug trafficking crime. Davis, 139 S. Ct. at 2324. Conversely, Article 5.15(a)(2) requires proof that the defendant pointed or aimed a firearm at another person, which § 924(c)(1)(A)(ii) does not require. On the face of the statutes, we cannot conclude that every time a defendant "brandishes" a firearm, he necessarily points the firearm at another person. Congress defined "brandish[ing]" as any act by the defendant that "make[s] the presence of the firearm known to another person, in order to intimidate that person." 18 U.S.C. § 924(c)(4). That definition includes--but is not limited to--pointing or aiming a firearm. Thus, because both federal § 924(c)(1)(A)(ii) and Commonwealth Article 5.15(a)(2) require proof of an element that

- 23 -

the other does not, the two statutes criminalize different offenses. See Blockburger, 284 U.S. at 304.

In sum, Almonte focused most of his energy on undermining the Government's arguments as to why his double jeopardy claim fails, but he did not establish a prima facie nonfrivolous double jeopardy claim. The burden of proof was on him, not on the Government, and Almonte failed to meet it. See United States v. Laguna-Estela, 394 F.3d 54, 56 (1st Cir. 2005) (holding that a defendant claiming double jeopardy "has the burden of presenting evidence to establish a prima facie nonfrivolous double jeopardy claim. Once such a claim is established, the burden shifts to the government to prove by preponderance of the evidence that the indictments charge separate offenses." (quoting United States v. Booth, 673 F.2d 27, 30-31 (1st Cir. 1982))); see also United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).[2]

Almonte has not shown plain error.

## III.

We conclude that the district court did not abuse its discretion when it denied Almonte's request for substitution of counsel, that Almonte's conviction under 18 U.S.C. § 2112 was a predicate "crime of violence" under 18 U.S.C. § 924(c)(3)(A), and

---

[2] In light of our conclusion that Almonte has not shown clear error, we need not reach prongs 3 and 4 of the plain error analysis.

- 24 -

that, under a plain error standard, Almonte has shown no double jeopardy violation.

**Affirmed.**