# United States Court of Appeals
## For the First Circuit

No. 20-1360

JULIO A. RODRÍGUEZ-MÉNDEZ,

Petitioner, Appellant,

v.

UNITED STATES,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Barron, Chief Judge,
Montecalvo and Aframe, Circuit Judges.

Kevin E. Lerman, Assistant Federal Public Defender with whom Rachel Brill, Federal Public Defender, District of Puerto Rico, Héctor L. Ramos-Vega, Interim Federal Public Defender, District of Puerto Rico, and Franco L. Pérez-Redondo, Assistant Federal Public Defender, Supervisor, Appeals Division, were on brief, for Appellant.

Michael A. Rotker, with whom, W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Ricardo A. Imbert-Fernández, Assistant United States Attorney, were on brief, for Appellee.

April 8, 2025

**AFRAME**, **Circuit Judge**.   This is an appeal from the district court's denial of Julio Rodríguez-Méndez's ("Rodríguez") motion under 28 U.S.C. § 2255.   In his motion, Rodríguez sought relief from (1) his conviction for felon-in-possession of a firearm under 18 U.S.C. § 922(g)(1) on double jeopardy grounds and (2) his sentence for that offense, which was based on the sentencing court's conclusion that he was an armed career criminal under 18 U.S.C. § 924(e).   We reject the double jeopardy claim but agree that Rodríguez should not have been sentenced as an armed career criminal.

## BACKGROUND

In November 2004, Rodríguez participated in a carjacking in Puerto Rico while possessing a firearm.   That conduct resulted in successive prosecutions in the Puerto Rico Commonwealth courts and the United States District Court for the District of Puerto Rico.   Rodríguez was first prosecuted in a Commonwealth court for robbery of a motor vehicle in violation Article 173B of the Puerto Rico Penal Code, P.R. Laws Ann. tit. 33 § 4279b (repealed 2004), and for carrying a weapon without a license in violation of Article 5.04 of the Puerto Rico Weapons Law, P.R. Laws Ann. tit. 25, § 458c (repealed 2013).   Rodríguez pleaded guilty and was sentenced to twelve years in prison.

Following the Commonwealth conviction, a federal grand jury indicted Rodríguez on three counts arising from the same

carjacking: aiding and abetting a carjacking, 18 U.S.C. §§ 2 and 2119; aiding and abetting the use of a firearm during and in relation to a crime of violence, 18 U.S.C. §§ 2 and 924(c); and unlawful possession of a firearm by a felon ("felon-in-possession"), 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[1] In addition, because he had at least three prior convictions for robbery of a motor vehicle in violation of Article 173B, Rodríguez was charged as an armed career criminal pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e) [hereinafter ACCA or the Act].[2]

Rodríguez pleaded guilty to the felon-in-possession count and the government dismissed the other charges. He was sentenced in November 2006. Due in part to the ACCA's heightened statutory penalties, Rodríguez received 216 months of imprisonment. Rodríguez filed a notice of appeal but voluntarily dismissed the appeal in October 2008. Rodríguez did not

---

[1] When Rodríguez was indicted, the penalty provision for § 922(g) was § 924(a)(2). "The Bipartisan Safer Communities Act, Pub. L. No. 117-159, § 12004, 136 Stat. 1313, 1329 (2022), has since moved the penalty provision . . . to [§] 924(a)(8), which provides for a longer maximum period of imprisonment." United States v. Minor, 63 F.4th 112, 118 n.4 (1st Cir. 2023). All subsequent references to § 924(a)(2) are to the provision as it existed at the time of the indictment.

[2] The presentence investigation report identified the ACCA predicates as convictions for armed robbery under Article 173 of the Puerto Rico Penal Code. The parties agree that the convictions, in fact, were for robbery of a motor vehicle in violation of Article 173B.

collaterally attack his conviction within a year of it becoming final.

Two significant legal developments followed. In June 2015, roughly a decade after Rodríguez's felon-in-possession conviction, the United States Supreme Court held that the residual clause of the ACCA was unconstitutionally vague. Johnson v. United States (Johnson II), 576 U.S. 591, 597 (2015).

Then, a year later, in June 2016, the Supreme Court held that the Commonwealth of Puerto Rico and the United States are one sovereign for double jeopardy purposes, thereby barring successive prosecutions for the same offense in Commonwealth and federal courts. Puerto Rico v. Sánchez Valle, 579 U.S. 59, 78 (2016).

About three months after the Supreme Court decided Sánchez Valle, Rodríguez filed a pro se motion for habeas relief under 28 U.S.C. § 2255 seeking to vacate his felon-in-possession conviction on double jeopardy grounds. After the appointment of counsel, Rodríguez amended his motion to challenge his ACCA enhancement, arguing that following Johnson II, his three prior Article 173B convictions no longer qualified as predicate offenses under the ACCA.

The district court rejected both claims. It held that double jeopardy did not bar Rodríguez's federal felon-in-possession prosecution because Rodríguez "failed to meet the stone set privity requirement necessary for his double jeopardy

- 4 -

claim to thrive." It also held that even after Johnson II, an Article 173B conviction constitutes an ACCA predicate because the offense has as an element the use, attempted use, or threatened use of physical force as defined by the ACCA. The district court concluded that was so because Article 173B requires a defendant to commit motor vehicle robbery using "an object capable of causing grave bodily injury." The district court denied certificates of appealability on both claims. Rodríguez appealed, and this Court granted him the required certificates.

**DOUBLE JEOPARDY**

On appeal, the government does not argue privity but instead proffers two alternative bases to affirm the district court's double jeopardy ruling. See Miller v. United States, 77 F.4th 1, 6 (1st Cir. 2023) (stating that this Court may affirm the denial of § 2255 relief on "any ground made manifest in the record"). First, the government contends that Rodríguez's § 2255 double jeopardy claim fails because Sánchez Valle does not apply retroactively. Second, it argues that, even if Sánchez Valle is retroactive, the double jeopardy claim fails because under Blockburger v. United States, 284 U.S. 299 (1932), felon-in-possession under federal law and carrying a gun without a license under Puerto Rico law are different offenses for double jeopardy purposes.

- 5 -

We agree with the government's Blockburger argument. We therefore assume without deciding that Sánchez Valle is retroactive. See, e.g., Goodrich v. Hall, 448 F.3d 45, 49 (1st Cir. 2006) ("[W]here a habeas petition can easily be denied on other grounds, there is no need to do a Teague analysis first.").

"The Double Jeopardy Clause of the Fifth Amendment [to the United States Constitution] prohibits more than one prosecution for the 'same offence'" where the prosecution is brought by the same sovereign. United States v. Reyes-Correa, 971 F.3d 6, 9 (1st Cir. 2020) (alteration in original) (quoting Sánchez Valle, 579 U.S. at 62). A state and the federal government, as separate sovereigns, may successively try a defendant for the same offense without violating double jeopardy. Id.; see also Gamble v. United States, 587 U.S. 678, 681 (2019) (describing the "dual-sovereignty" doctrine). This rule, however, does not apply to successive prosecutions brought by the United States and Puerto Rico because they are one sovereign for double jeopardy purposes. See Sánchez Valle, 579 U.S. at 78. Thus, the United States and Puerto Rico "may not 'successively prosecute a single defendant for the same'" offense. Reyes-Correa, 971 F.3d at 9 (quoting Sánchez Valle, 579 U.S. at 62).

After Sánchez Valle, we must consider whether Rodríguez's convictions -- the federal felon-in-possession conviction under § 922(g)(1) and the Puerto Rico unlicensed

- 6 -

carrying of a firearm conviction under Article 5.04 -- represent convictions for the same offense.  There is no dispute that both convictions stem from Rodríguez's gun possession during the same 2004 carjacking.  But the double jeopardy clause does not bar successive prosecutions for separate offenses merely because they arise from the same conduct.  See United States v. Morris, 99 F.3d 476, 479 (1st Cir. 1996) (noting "the defendant may be prosecuted consecutively . . . even if the crimes arise out of the same conduct or nucleus of operative facts").  Under Blockburger, successive prosecutions by the same sovereign for the same conduct are permissible so long as the offenses require proving different elements.[3]  See United States v. Dixon, 509 U.S. 688, 696 (1993) ("The same-elements test, sometimes referred to as the 'Blockburger' test, inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars . . . successive prosecution.").

_____

[3]    In asserting his double jeopardy claim, Rodríguez at points emphasizes that his two convictions rely on the same underlying evidence.  To the extent Rodríguez is arguing that the two counts are not separate offenses because they rely on the same evidence, that is incorrect.  "[T]he Blockburger rule depends on statutory analysis, not on evidentiary comparisons."  United States v. Morris, 99 F.3d 476, 479 (1st Cir. 1996); see also United States v. Lanoue, 137 F.3d 656, 661 (1st Cir. 1998) ("The Blockburger test looks to the elements of each offense rather than to the evidence used to prove these elements."); United States v. Sepulveda, 102 F.3d 1313, 1316 (1st Cir. 1996) ("[A] defendant can be convicted of two differently defined offenses, based on the same core of facts, so long as each offense requires an element that the other does not.").

- 7 -

This Court has previously applied Blockburger to the two relevant offenses here. In United States v. Almonte-Núñez, we held that for double jeopardy purposes, "the federal § 922(g) offense and the Commonwealth Article 5.04 offense are separate offenses because each offense requires an element of proof that the other does not." 963 F.3d 58, 70 (1st Cir. 2020) (citing Blockburger, 284 U.S. at 304). We explained that "[s]ection 922(g) does not require a showing that the defendant [was without] a license, and Article 5.04 does not require proof that the defendant was a prohibited person [because of a prior felony] or that the firearm was in or affecting interstate commerce." Id. We follow this precedent here.[4] See United States v. Walker-Couvertier, 860 F.3d 1, 8 (1st Cir. 2017) (stating that "in a multi-panel circuit, a new panel is 'bound by prior panel decisions that are closely on

---

[4] Rodríguez asks that we consider his double jeopardy argument without relying on Almonte-Núñez because there, despite performing a full Blockburger analysis, we considered the defendant's double jeopardy claim only on plain error review. We decline. Almonte-Núñez turned on the first prong of plain error review, whether the district court erred. See 963 F.3d at 69-70; see also United States v. Pérez Rodríguez, 13 F.4th 1, 16 (1st Cir. 2021) (stating that the first prong of plain error review requires the defendant to show that "an error occurred"). This threshold inquiry -- was there legal error -- is identical to our inquiry here. Cf. United States v. Duquette, 778 F.3d 314, 317 n.3 (1st Cir. 2015) (noting that where defendant "is unable to demonstrate any error -- plain or otherwise -- . . . it makes no difference . . . whether we apply de novo or plain error review"). The holding in Almonte-Núñez is therefore directly on point. Moreover, were we to consider Rodríguez's double jeopardy claim from scratch, we would reach the same conclusion for the reasons described above.

point'" (quoting San Juan Cable LLC v. P.R. Tel. Co., 612 F.3d 25, 33 (1st Cir. 2010))).

Indeed, Rodríguez does not seriously contest Almonte-Núñez's elements analysis. Rather, he contends that Blockburger should not be applied to his case in the usual manner. He first suggests that we should not apply Blockburger "in a rigid fashion" because the successive prosecutions at issue here involve criminal statutes passed by different legislative bodies -- the Puerto Rico legislature and Congress. He subsequently contends that even if "the language" used in § 922(g)(1) and Article 5.04 "may be slightly different," the two statutes share the same "foci and elements" insofar as both laws "prevent specific individuals from obtaining or possessing weapons."

We decline Rodríguez's invitation to modify Blockburger for purposes of evaluating his double jeopardy claim. Post-Sánchez Valle, we have faithfully applied Blockburger to address double jeopardy claims involving successive Commonwealth and federal prosecutions. See Reyes-Correa, 971 F.3d at 9; Almonte-Núñez, 963 F.3d at 69. We do so again here. Under Blockburger, to determine whether the sovereign intended to create separate offenses for double jeopardy purposes, we do not compare the "foci" or the general thrust of statutes. Instead, "we examine whether each offense 'requires proof of an additional fact which the other does not.'" United States v. Gerhard, 615 F.3d 7, 18

(1st Cir. 2010) (quoting Blockburger, 284 U.S. at 304). As we explained in Almonte-Núñez, Article 5.04 and § 922(g)(1) contain distinct elements and are thus separate offenses for double jeopardy purposes. 963 F.3d at 70. The district court therefore properly denied Rodríguez's § 2255 motion insofar as it alleges a double jeopardy violation.

## ARMED CAREER CRIMINAL

Having concluded that Rodríguez was properly convicted under § 922(g)(1), we turn to whether he was lawfully sentenced as an armed career criminal. The ACCA increases the otherwise applicable statutory penalties for unlawful possession of a firearm, § 922(g), to a range of fifteen years to life imprisonment. Compare 18 U.S.C. § 924(e)(1) (requiring fifteen-year mandatory minimum sentence for a felon-in-possession conviction and an ACCA finding), with 18 U.S.C. § 924(a)(2) (requiring a ten-year statutory maximum for the same offense absent an ACCA finding). Someone convicted under § 922(g) faces ACCA-enhanced penalties if the person "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." Id. § 924(e)(1); see also United States v. Whindleton, 797 F.3d 105, 108 (1st Cir. 2015) (same).

Rodríguez received a substantially enhanced sentence of 216 months because the sentencing court determined that the ACCA

- 10 -

applied. To make this determination, the sentencing court considered Rodríguez's prior convictions for motor vehicle robbery under Article 173B of the Puerto Rico Penal Code. Following Rodríguez's § 2255 motion contesting the ACCA enhancement, the district court reviewed the Article 173B convictions and held that the sentencing court correctly found that the convictions qualified as predicate offenses under the ACCA. Rodríguez now challenges that determination, which we consider de novo. See Whindleton, 797 F.3d at 108 ("Whether a prior conviction qualifies as an ACCA predicate offense is a legal question we review de novo.").

We begin by describing the legal framework. After the Supreme Court's ruling that the ACCA's residual clause is unconstitutional, Johnson II, 576 U.S. at 606, there remain two ways for a crime to meet the ACCA's definition of a violent felony. The first is the so-called force clause, which counts a past conviction as a violent felony if the offense of conviction "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). The second is the so-called enumerated offense clause, which qualifies an offense as a violent felony if, inter alia, the offense "is burglary, arson, or extortion." Id. § 924(e)(2)(B)(ii).

- 11 -

To decide whether a particular offense qualifies as an ACCA violent felony under either the force clause or the enumerated offense clause, we employ a "categorical approach." See United States v. Báez-Martínez, 950 F.3d 119, 124 (1st Cir. 2020) (applying a categorical approach to determine whether a felony qualifies under the force clause); Mathis v. United States, 579 U.S. 500, 504 (2016) (applying a categorical approach to determine whether a felony qualifies under the enumerated offense clause). The categorical approach requires courts to confine their analysis to the legal elements of the prior conviction and not the conviction's "specific facts." United States v. Bain, 874 F.3d 1, 29 (1st Cir. 2017).

In applying the categorical approach to the force clause, a sentencing court asks "whether a state offense necessarily involves the defendant's 'use, attempted use, or threatened use of physical force against the person of another.'" Borden v. United States, 593 U.S. 420, 424 (2021) (emphasis added) (quoting 18 U.S.C. § 924(e)(2)(B)(i)). "[P]hysical force" under the ACCA refers to "violent force -- that is, force capable of causing physical pain or injury to another person." United States v. Hudson, 823 F.3d 11, 15 (1st Cir. 2016) (quoting Johnson v. United States (Johnson I), 559 U.S. 133, 140, (2010)). "If any -- even the least culpable -- of the acts criminalized do not entail [using physical force against another person] the statute

- 12 -

of conviction does not categorically match the [ACCA] standard, and so cannot serve as an ACCA predicate." Borden, 593 U.S. at 424 (citing Johnson I, 559 U.S. at 137).

When applying the categorical approach to the enumerated offense clause, a sentencing court first discerns the generic version of the charged offense. Mathis, 579 U.S. at 503-04. The court next identifies the elements of the generic offense -- what the "prosecution must prove to sustain a conviction." Id. at 504 (quoting Black's Law Dictionary 634 (10th ed. 2014)). After identifying those elements, the court decides if the elements of the crime of conviction "are the same as, or narrower than, those of the generic offense." Id. If so, the crime of conviction qualifies as an ACCA violent felony. See id. (applying the categorical approach to the enumerated offense of burglary). "But if the crime of conviction covers any more conduct than the generic offense, then it is not an ACCA [enumerated offense] -- even if the defendant's actual conduct (i.e., the facts of the crime) fits within the generic offense's boundaries." Id.

As mentioned, Rodríguez's relevant prior convictions were for robbery of a motor vehicle under Article 173B. See tit. 33, § 4279b. The statute provides:

> Any person who, using an object capable of causing grave bodily injury, unlawfully appropriates him or herself of a motor vehicle belonging to another, taking it away from the person, or from the person in whose possession

- 13 -

it is at the time, in his/her immediate presence and against his/her will, through the use of violence or intimidation, shall be sanctioned with a fixed term of imprisonment of eighteen (18) years.

Id.

Under this statute, a person violates Article 173B by appropriating a motor vehicle "through the use of violence or intimidation." Id. There is no dispute that the statutory phrase "violence or intimidation" represents a single, indivisible offense element. See Descamps v. United States, 570 U.S. 254, 258 (2013) (describing an indivisible statute as "one not containing alternative elements" and thus not defining multiple crimes). Otherwise stated, violence or intimidation are merely different means, i.e., "factual ways" of committing the element. Mathis, 579 U.S. at 506. Hence, for Article 173B to qualify as an ACCA predicate pursuant to the categorical approach, every way of engaging in "violence or intimidation" must also satisfy the ACCA's definition of violent felony. Put differently, if there is some way of committing "violence or intimidation" under Article 173B that does not qualify as a violent felony under the ACCA, then any prior Article 173B conviction does not constitute an ACCA predicate. See Borden, 593 U.S. at 424.

We can resolve Rodríguez's ACCA argument by looking just to the meaning of the term "intimidation" under Article 173B.[5] Under the force clause, the court asks, "whether a state offense necessarily involves the defendant's 'use, attempted use, or threatened use of physical force against the person of another.'" Borden, 593 U.S at 424 (emphasis added) (quoting § 924(e)(2)(B)(i)). Intimidation directed at a person can satisfy the force clause because it may constitute "threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i); see also United States v. Ellison, 866 F.3d 32, 35, 37 (1st Cir. 2017) (finding federal bank robbery qualifies under the United States Sentencing Guidelines' definition of crime of violence pursuant to § 4B1.2(a)(2) -- which tracks the ACCA's definition of violent felony -- because it "has as an element 'the . . . threatened use of physical force against the person of another'" (quoting U.S.S.G. § 4B1.2(a) (Nov. 1, 2015))).

Puerto Rico law, however, does not limit intimidation to threatened use of force against the "person of another." 18 U.S.C. § 924(e)(2)(B)(i). Rather, pursuant to Article 174, intimidation also includes threats against property. See P.R. Laws Ann. tit. 33, § 4280 (repealed 2004). The definition of intimidation -- set

_____

[5] For this reason, we need not consider the parties' dispute as to whether Article 173B offenses involving violence meet the ACCA's definition of a violent felony.

- 15 -

forth in Article 174 and applicable to Article 173B -- is therefore broader than the force clause's ambit.  Consequently, Article 173B does not qualify as an ACCA predicate under that clause.  See United States v. Hatley, 61 F.4th 536, 538-39 (7th Cir. 2023) (stating that "using force against property [] does not fit within [the] ACCA's force clause" as that clause "only provides for committing force against persons, not property").

The government makes two arguments in response.  First, it contends that because Article 173B requires a perpetrator to "us[e] an object capable of causing grave bodily injury," any threat of physical force against property also constitutes a threat of physical force against the person present for the robbery.  The government cites no authority for this proposition, and we are unpersuaded.  To qualify as an ACCA predicate, an offense must involve a threat of force against a person.  18 U.S.C. § 924(e)(2)(B)(i).  The mere presence of a dangerous object does not, without more, transform every threat against property into a threat against a person.  Cf. United States v. Starks, 861 F.3d 306, 321-24 (1st Cir. 2017) (stating that Massachusetts armed robbery was not an ACCA violent felony in part because the Massachusetts statute did not require the perpetrator to use the dangerous weapon to commit the offense); accord United States v. Parnell, 818 F.3d 974, 980-81 (9th Cir. 2016) ("The mere possession

of a weapon . . . does not bring Massachusetts' armed robbery statute within [the] ACCA's force clause.").

The government alternatively argues that a carjacking arising from threats to property constitutes extortion and thus qualifies as a generic crime under the enumerated offense clause. The government properly defines extortion as an offense that forces the victim to part with property by induced consent. It posits that these same elements are present in Article 173B because Article 173B requires a perpetrator to take the victim's car "against his/her will." In both cases, the government argues, the victim "acquiesces in the face of the intimidation." As such, according to the government, "Article 173B robbery through intimidation fits squarely into [the extortion] box."

We disagree. The Supreme Court has described the generic definition of extortion as "obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats." Scheidler v. Nat'l Org. for Women, Inc., 537 U.S. 393, 409 (2003) (quoting United States v. Nardello, 393 U.S. 286, 290 (1969)). "The generic definition of extortion . . . and the [federal] Hobbs Act definition of extortion are nearly identical." United States v. Kirsch, 903 F.3d 213, 225-26 (2d Cir. 2018) (internal quotation marks omitted). Resultingly, we have considered decisions "involving Hobbs Act extortion 'as persuasive analogous authority'" in evaluating whether a state

- 17 -

statute constitutes generic extortion. <u>United States</u> v. <u>Muñoz-Martínez</u>, 79 F.4th 44, 53 (1st Cir. 2023) (quoting <u>United States</u> v. <u>Saccoccia</u>, 354 F.3d 9, 12 n.2 (1st Cir. 2003)).

In the analogous Hobbs Act context, we have observed that "[c]onsent is 'the razor's edge that distinguishes extortion from robbery.'" <u>Muñoz Martínez</u>, 79 F.4th at 53 (alteration in original) (quoting <u>United States</u> v. <u>Burhoe</u>, 871 F.3d 1, 28 (1st Cir. 2017)). As the Supreme Court explained, "the phrase 'with his consent' is designed to distinguish extortion ('obtaining of property from another, <u>with his consent</u>,') from robbery ('obtaining of personal property from the person or in the presence of another, <u>against his will</u>')." <u>Ocasio</u> v. <u>United States</u>, 578 U.S. 282, 297 (2016) (internal citations omitted) (first quoting 18 U.S.C. § 1951(b)(2); and then quoting § 1951(b)(1)). It follows that extortion's essential feature that differentiates it from robbery "is [] that the victim retained some degree of choice in whether to comply with the extortionate threat, [no matter how] much of a Hobson's choice that may [have been]." <u>Muñoz-Martínez</u>, 79 F.4th at 53 (quoting <u>Burhoe</u>, 871 F.3d at 28) (first alteration in original).

Applied here, it is unclear why Article 173B carjacking achieved via intimidation toward property using a dangerous object would invariably require a victim's "grudging consent" such that it would constitute extortion. <u>See</u> <u>Ocasio</u>, 578 U.S. at 297.

Although a victim could be forced to consent through such intimidation, that is not always so. In the face of such intimidation, a victim could choose to resist and thus the perpetrator would have appropriated the vehicle without the victim's consent. Accordingly, not all ways of violating Article 173B constitute generic extortion. See id. (noting that as to "the Hobbs Act, the phrase 'with his consent' is designed to distinguish extortion") (quoting U.S.C. § 1951(b)(2)).

In so holding, we diverge from other circuits that have concluded that the line between induced consent and a taking against someone's will is so fine as to be meaningless. See, e.g., Hatley, 61 F.4th at 539 ("In our view, generic extortion encompasses Hobbs Act robbery using force against property."); United States v. Castillo, 811 F.3d 342, 348 (10th Cir. 2015) ("We see no meaningful difference in this context between a taking of property accomplished against the victim's will and one where the victim's consent is obtained through force or threats.").

As we describe above, the categorical approach demands that we compare the elements of a generic offense against the elements of the crime of conviction. Mathis, 579 U.S. at 504. Here, generic extortion requires an element of induced consent. See Scheidler, 537 U.S. at 409. But Article 173B does not. A defendant may employ intimidation toward property during a carjacking, but a conviction under Article 173B does not require

- 19 -

the victim's consent to the taking of the vehicle. Thus, Article 173B "sweeps more broadly than [a] generic crime" of extortion. Descamps, 570 U.S. at 261; see also Raines v. United States, 898 F.3d 680, 689-90 (6th Cir. 2018) (explaining that an offense that "'involves the non-consensual taking of money or property from another' cannot qualify as a generic extortion crime because it does not involve a taking with the victim's induced consent" (quoting United States v. Gardner, 823 F.3d 793, 802 n.5 (4th Cir. 2016))). Article 173B therefore cannot be an ACCA predicate under the enumerated offense clause.

Taken together, the above discussion reveals a mismatch between (1) the broad definition of "intimidation" under Article 173B and (2) the requirements for an offense to constitute an ACCA predicate. Under Article 173B, someone could rob a motor vehicle through "intimidation" using an object capable of causing grave bodily injury in ways that neither require threats of physical force against a person nor represent a generic offense under § 924(e). 18 U.S.C. § 924(e)(2)(B)(i-ii). Applying the categorical approach, Article 173B is therefore not an ACCA predicate, and Rodríguez was thus unlawfully subjected to the ACCA sentencing enhancements for his § 922(g)(1) conviction.[6]

_____

[6] Rodríguez makes a separate argument that because Article 173B can be violated based on a mens rea of recklessness, there are ways to violate Article 173B that are not violent felonies

- 20 -

**CONCLUSION**

Blockburger and the ACCA's categorical approach each share a focus on statutory elements rather than a defendant's actual conduct. This split decision demonstrates that at certain times an elements-focus benefits the defendant and at other times it benefits the government. Here, Rodríguez's felon-in-possession conviction did not violate double jeopardy because the Commonwealth's firearm-license offense and the federal felon-in-possession offense contain different elements. At the same time, Rodríguez was wrongly sentenced under the ACCA for his felon-in-possession offense because the elements of Article 173B do not satisfy the ACCA's definition of a violent felony. Accordingly, we **reverse** the denial of Rodríguez's § 2255 motion insofar as it seeks vacatur of his felon-in-possession sentence. We otherwise **affirm**.

---

pursuant to the ACCA. We do not reach this argument because we have resolved the ACCA question favorably to Rodríguez on other grounds.

- 21 -